SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-06-0061-AP |
| Appellee, | ) |
| | ) Maricopa County |
| v. | ) Superior Court |
| | ) No. CR2002-009759 |
| CHRISTOPHER ALLEN HARGRAVE, | ) |
| | ) |
| Appellant. | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Roland J. Steinle, Judge

**REMANDED FOR RESENTENCING ON BURGLARY,
AFFIRMED IN ALL OTHER RESPECTS**

_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                     Phoenix
    By   Kent E. Cattani, Chief Counsel,
        Criminal Appeals/Capital Litigation Section
        Jeffrey A. Zick, Assistant Attorney General
Attorneys for State of Arizona

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER              Phoenix
    By   Karen M. Noble, Deputy Public Defender
        Louise Stark, Deputy Public Defender
Attorneys for Christopher Allen Hargrave

_____

**B E R C H**, Chief Justice

¶1      Christopher Allen Hargrave was convicted of three counts of first degree murder, one count of armed robbery, one count of burglary, and three counts of kidnapping. He was sentenced to death for each of the murders. In this automatic appeal, Hargrave raises fourteen claims of error and lists

fifteen additional issues to avoid preclusion. This Court has jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") § 13-4031 (2010).

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

¶2 Late on the evening of May 19, 2002, Christopher Hargrave and Steve Boggs drove to a fast food restaurant from which Hargrave had recently been fired. Hargrave entered dressed in his work uniform and told the employees that he had been called into work.

¶3 Armed with a handgun, Boggs followed Hargrave into the restaurant and ordered the three employees to lie down on the floor and empty their pockets. Hargrave watched the employees while Boggs took money from two registers. Hargrave then assisted Boggs in directing the employees through the cooler into the freezer where Boggs lined them up and shot them as he shouted racial epithets. Hargrave also fired the murder weapon once inside the cooler. He later tried to withdraw money from an ATM using a bank card belonging to one of the victims.

¶4 A customer who arrived at the restaurant after the shootings saw victim B.A. on the ground by the back door and called the police. When police officers arrived, they found the

---

[1] We view the facts in the light most favorable to sustaining the verdict. *State v. Dann*, 205 Ariz. 557, 562 n.1, 74 P.3d 231, 236 n.1 (2003).

body of victim F.J. on the floor near a telephone and the body of victim K.B. inside the freezer. All three victims died from their gunshot wounds. Between $200 and $500 was missing from the cash registers.

¶5        On May 21, 2002, Boggs pawned a .45 caliber handgun at a shop owned by Hargrave's girlfriend's parents, who reported the transaction to the police. Ballistics tests indicated that the gun had ejected the shell casings found at the restaurant, and an analyst concluded that Hargrave was a "major contributor" to the DNA recovered from the grip of the weapon.

¶6        On June 6, 2002, officers apprehended Hargrave while he was sleeping at a campsite. Nearby, officers found two handguns, a shotgun, two assault rifles, boxes of ammunition, and several documents evidencing Hargrave's involvement with the "Imperial Royal Guard," a white supremacist organization. As officers arrested him, Hargrave stated that "things would have been different" if he had been awake when they arrived.

¶7        A jury found Hargrave guilty of three counts of first degree felony and premeditated murder and all other charges. The jury found three aggravating factors for each murder: (1) the murders were committed in the expectation of pecuniary gain, A.R.S. § 13-751(F)(5) (2010);[2] (2) the murders were

_____

[2]      In 2008, the capital sentencing statutes were renumbered as A.R.S. §§ 13-751 to -759.   2008 Ariz. Sess. Laws, ch. 301,

committed in an especially cruel manner, *id.* § 13-751(F)(6); and (3) multiple homicides were committed during the offense, *id.* § 13-751(F)(8).

¶8        Hargrave did not present mitigation during the penalty phase and the jury determined that he should be sentenced to death for each murder.  The court imposed a death sentence for each of the murders and concurrent terms of twenty-one years for the armed robbery, fifteen years for the burglary, and twenty-one years for each of the three kidnapping counts.

## II.   DISCUSSION

### A.   Guilt Phase Issues

#### 1.   Prior act evidence

¶9        Hargrave argues on appeal that the trial court erred in admitting three categories of evidence at trial:  (1) evidence related to his membership in the Imperial Royal Guard ("IRG"), (2) evidence of his statement to officers during his arrest that "things would have been different" had he been awake, and (3) evidence regarding the guns and ammunition recovered from the campsite.  He claims that the evidence was not relevant and its admission violated Arizona Rule of Evidence 404(b) because its limited probative value was substantially outweighed by the danger of prejudice.  He also contends that the prosecutor used

---

§§ 26, 38-41 (2d Reg. Sess.).   Because there were no relevant substantive changes, we cite the current version of the statutes.

the evidence for an improper purpose.

¶10 Evidence of a defendant's prior or subsequent acts is not admissible "to show that the defendant is a bad person or has a propensity for committing crimes." *State v. McCall*, 139 Ariz. 147, 152, 677 P.2d 920, 925 (1983) (prior acts); *see also State v. Moreno*, 153 Ariz. 67, 68, 734 P.2d 609, 610 (App. 1986) (subsequent acts). Other act evidence may be admitted, however, for other purposes, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b). The proponent must establish by clear and convincing evidence that the defendant committed the act, *State v. Terrazas*, 189 Ariz. 580, 582, 944 P.2d 1194, 1196 (1997), and the court must then "(1) find that the act is offered for a proper purpose under Rule 404(b); (2) find that the prior act is relevant to prove that purpose; (3) find that any probative value is not substantially outweighed by unfair prejudice; and (4) give upon request an appropriate limiting instruction," *State v. Anthony*, 218 Ariz. 439, 444 ¶ 33, 189 P.3d 366, 371 (2008).

### a. IRG evidence

¶11 Hargrave and Boggs had formed the Imperial Royal Guard ("IRG"), a paramilitary organization that asserted the supremacy of the white race and espoused negative views of racial minorities. Boggs served as "Chief of Staff" and Hargrave as

- 5 -

"Assistant Chief of Staff."  At Hargrave's campsite, police discovered Hargrave's IRG membership application, his oath of allegiance to the IRG, a binder containing a declaration describing the IRG's tenets, and a camouflage jacket bearing his IRG "Assistant Chief of Staff" name tag.

¶12     The State offered the IRG evidence to establish racial bias as a potential motive for the crimes.  It presented evidence that all three victims were members of minority groups and that Boggs had shouted racial epithets during the shootings. Hargrave argues that the trial court erred in admitting the IRG evidence because it was not relevant to the crimes charged and no evidence established that the murders were motivated by racial bias.

¶13     Because Hargrave did not object to the IRG evidence at trial,[3] we review its admission for fundamental error, which is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, [or] error of such magnitude that the defendant could not possibly have

_____
[3]     The State filed a pretrial notice of its intent to admit evidence of Hargrave's membership in the IRG.  At a subsequent status conference, Hargrave's attorney said that he had not read the State's notice, but *would file* a response.  Hargrave's counsel later withdrew from the case without filing a response. When the case was assigned to a different judge for trial, the court ordered the parties to file all pretrial motions twenty days before trial.  Hargrave's new counsel filed various pretrial motions, but did not contest the admission of the IRG evidence in a motion or at trial.

received a fair trial." *State v. Henderson*, 210 Ariz. 561, 567 ¶ 19, 115 P.3d 601, 607 (2005) (quoting *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984)).  To prevail under this standard, Hargrave must first establish that an error occurred, then prove that the error was fundamental in nature and caused prejudice.  *Id.* at 567 ¶¶ 20, 23, 115 P.3d at 607.

¶14      Hargrave has not established that any error occurred. Contrary to Hargrave's argument, motive is relevant in a murder prosecution.  *State v. Hunter*, 136 Ariz. 45, 50, 664 P.2d 195, 200 (1983).  He counters that the State presented evidence of other motives, such as robbery or retaliation for having been fired from his job.  But the fact that the State may have evidence of other motives does not preclude the State from presenting the IRG motive evidence.  *See* Ariz. R. Evid. 404(b); *see also State v. Andriano*, 215 Ariz. 497, 503 ¶ 26, 161 P.3d 546, 549 (2007) (finding evidence of defendant's extra-marital affair admissible under Rule 404(b) to prove motive, even though less prejudicial evidence of motive existed).

¶15      Citing *Dawson v. Delaware*, 503 U.S. 159 (1992), Hargrave claims that his affiliation with the IRG was protected by the First Amendment.  In *Dawson*, the prosecution attempted to introduce evidence of the defendant's Aryan Brotherhood and swastika tattoos during the penalty phase of his murder trial. 503 U.S. at 161.  The Court held that the First and Fourteenth

Amendments prohibited the introduction of this evidence because it was not relevant to the capital sentencing proceedings. *Id*. at 160.

¶16      Here, in contrast, evidence of Hargrave's affiliation with the IRG was relevant to establish a motive for the crimes and its probative value was not substantially outweighed by the prejudice it might have caused.  Hargrave has not satisfied his initial burden of establishing that the trial court committed any error in admitting this evidence.[4]

         b.    *Statements to police officers*

¶17      Hargrave argues that the trial court erred in admitting his post-arrest comments that "things would have been different" if he had been awake when the officers arrived and that "the police were lucky that he was asleep" when they took him into custody.  He contends that the statements served no proper purpose, were not connected to the murders, and allowed jurors to speculate that he was a violent person.  The prosecutor offered the statements to show a consciousness of guilt.

¶18      Because Hargrave did not object to these statements at trial, we review for fundamental error.  *Henderson*, 210 Ariz. at

---

[4]      Hargrave also challenges the authenticity of the IRG documents, noting that the handwriting was not identified as his.  Hargrave did not raise this objection at trial, *see Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 286 ¶ 9, 9 P.3d 314, 317 (2000) (applying contemporaneous objection rule), and does not persuasively argue that any error in this respect was fundamental.

567 ¶ 19, 115 P.3d at 607.

¶19    There was no fundamental error. Hargrave's statements did not go to the foundation of his case, cause him prejudice, or otherwise deprive him of a fair trial or any right essential to his defense. *See id*. at 568 ¶ 24, 115 P.3d at 608. The State produced substantial evidence of Hargrave's participation in the murders, including eyewitness testimony, Hargrave's DNA on the murder weapon, a photograph of Hargrave attempting to use victim F.J.'s ATM card after the murders, and Hargrave's own admission of his culpability in planning and implementing the armed robbery.

c. *Guns and ammunition*

¶20    Hargrave objected to the admission of guns, boxes of ammunition, and shell casings found at his campsite, arguing that the evidence was not relevant because the guns and ammunition were not used during the murders. The court overruled Hargrave's objection, finding the evidence of Hargrave's arrest with Boggs's guns relevant to rebut Hargrave's claim that he did not know that Boggs would have a gun during the restaurant robbery.[5]

---

[5]    Citing *State v. Uriarte*, 194 Ariz. 275, 282 ¶ 36, 981 P.2d 575, 582 (App. 1998), Hargrave claims that no clear and convincing evidence shows that he "took any affirmative action to possess the guns"; Boggs left him at the campsite with the weapons and without transportation. But in *Uriarte*, the court found error in the admission of evidence that was largely

- 9 -

**¶21** We review the trial court's evidentiary ruling for abuse of discretion. *State v. Aguilar*, 209 Ariz. 40, 49 ¶ 29, 97 P.3d 865, 874 (2004).

**¶22** In *State v. Ellison*, we found that the trial court did not abuse its discretion in admitting evidence that a defendant possessed a gun before and after the charged crime because it made the defendant's story less plausible. 213 Ariz. 116, 133 ¶ 58, 140 P.3d 899, 915 (2006). The evidence here was similarly relevant to rebut Hargrave's main defense – that he did not know Boggs would have a gun. The trial judge did not abuse his discretion in admitting evidence of the campsite guns and ammunition.[6]

---

uncorroborated and unsupported. *Id.* Here, in contrast, the State proved by clear and convincing evidence that Hargrave possessed the campsite guns.

[6] Several of the guns recovered at the campsite belonged to W.D., the owner of the pawn shop where Boggs pawned the murder weapon. Hargrave argues that in presenting the guns and ammunition evidence, Detective Vogel violated the trial court's order not to mention a burglary of W.D.'s residence. The reference occurred in response to a juror's question asking how officers learned that the .45 was at the pawn shop. The detective responded that the shop owners mentioned the gun when they contacted the sheriff's office regarding a burglary of their home. Hargrave did not object to the question or the response. This fleeting mention of the burglary does not constitute fundamental error. Moreover, Hargrave's briefs did not set forth any argument that this statement caused reversible error. *See State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989) (noting that failure to "present significant arguments, supported by authority," "usually constitutes abandonment and waiver of that claim").

### d.    Limiting instruction

¶23        Hargrave asserts that the trial court erred in its final limiting instruction regarding 404(b) evidence.[7]  The State concedes that the trial court erred in instructing the jurors that they could consider this evidence as demonstrating that Hargrave had a character trait that predisposed him to commit

---

[7]     The instruction stated:

> Evidence of other acts has been presented.  You may consider these acts only if you find that the State has proved by clear and convincing evidence that the defendant committed these acts.  You may only consider this act to establish the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  You must not consider this act to determine that the defendant acted in conformity with the defendant's character or character trait and therefore committed the charged offense.
>
> You may consider this evidence in determining whether the defendant had a character trait that predisposed him to commit the crimes charged.  You may determine that the defendant had a character trait that predisposed him to commit the crime charged only if you decide that the State has proved by clear and convincing evidence that:
>
> 1.    The defendant committed these acts; and
> 2.    These acts show the defendant's character predisposed him to commit the crimes charged.
>
> You may not convict the defendant of the crimes charged simply because you find that he committed these acts, or that he had a character trait that predisposed him to commit the crime charged.  Evidence of these acts does not lessen the State's burden to prove the defendant's guilt beyond a reasonable doubt [sic] the crimes charged.

the crimes.  Such a limiting instruction is properly given when the jury hears evidence regarding sexual propensity, Ariz. R. Evid. 404(c), not evidence of prior acts, Ariz. R. Evid. 404(b). Hargrave did not object to this erroneous instruction at trial, however, and so we review for fundamental error.  *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

¶24     The erroneous instruction did not deny Hargrave a fair trial or a right essential to his defense.  Despite the error, the jury instruction, taken as a whole, properly advised jurors of the State's burden to prove guilt beyond a reasonable doubt and instructed them not to use the prior act evidence as a basis for convicting Hargrave of the charges.  Hargrave has not met his burden of establishing that this error constituted fundamental error.

¶25     There was also either an error in the trial court's reading of the limiting instruction or in the court reporter's transcription of the instruction.  The transcript reads:  "You must [sic] consider this act to determine that the defendant acted in conformity with the defendant's character or character trait and therefore committed the charged offense."  The "[sic]" notation, which appears in the original transcript, could be interpreted in one of two ways:  Either the judge misspoke and the court reporter noted the error, or the court reporter did not hear what was said and included the notation to fill the

blank in the transcript.

¶26    Hargrave has not met his burden of persuading us that the trial judge gave an improper instruction.  It is highly unlikely that such an improper instruction, if given, would have escaped the notice of the trial judge, the prosecutor, and defense counsel.  Moreover, the jurors had with them when they deliberated an instruction that correctly stated the law on this issue.  Viewing the jury instructions as a whole, we cannot conclude that the error in reading the limiting instruction, if one occurred, rises to the level of fundamental error.

2.    Armed robbery indictment

¶27    Hargrave argues that the armed robbery indictment was duplicitous because it charged more than one crime in the same count and erroneous because it charged armed robbery of the restaurant.  He therefore urges us to vacate the armed robbery conviction and the felony murder convictions predicated on it.

¶28    A defendant must challenge a defect in a charging document before trial.  Ariz. R. Crim. P. 13.5(e), 16.1(c).  This requirement affords the state an opportunity to cure a defective charging document.  *State v. Anderson* (*Anderson II*), 210 Ariz. 327, 336 ¶ 17, 111 P.3d 369, 378 (2005).  Because Hargrave failed to challenge the indictment before trial, he has waived this issue unless he can establish fundamental error. *See Henderson*, 210 Ariz. at 567-68 ¶¶ 19-20, 115 P.3d at 607-08.

- 13 -

¶29    We require each offense alleged against a defendant to be charged in a separate count. *State v. Whitney*, 159 Ariz. 476, 480, 768 P.2d 638, 642 (1989); *see also* Ariz. R. Crim. P. 13.2, 13.3. Duplicitous indictments, which charge more than one crime in the same count, are prohibited because "they fail to give adequate notice of the charge to be defended, they present a hazard of a non-unanimous jury verdict, and they make a precise pleading of prior jeopardy impossible in the event of a later prosecution." *Whitney*, 159 Ariz. at 480, 768 P.2d at 642. A single count is permissible, however, if several transactions are "merely parts of a larger scheme." *Id.* (quoting *State v. Via*, 146 Ariz. 108, 116, 704 P.2d 238, 246 (1985)).

¶30    The single verdict form for armed robbery in this case did not specify the individuals harmed or the property taken. Hargrave thus claims that we cannot know whether the jurors convicted him of the nonexistent crime of armed robbery of the restaurant, or whether the jury returned a non-unanimous verdict on armed robbery by convicting him of taking different property from different victims.

¶31    We have rejected a similar argument. In *State v. Van Vliet*, the defendant also argued that the information was erroneous because it alleged armed robbery of a grocery store. 108 Ariz. 162, 163, 494 P.2d 34, 35 (1972). We upheld the conviction, observing that "[a]n information is sufficient if it

- 14 -

clearly sets forth the offense in such manner as to enable a person of common understanding to know what is intended. Simplicity rather than technicality is the goal to be achieved." *Id.* Here, the indictment also adequately conveyed the offense charged. Moreover, it did not charge robbery of the restaurant, but instead named the three victims.

¶**32**        We have also rejected the argument that not specifying the victim or property in an armed robbery count requires reversal, *see id.*, concluding that proper jury instructions and verdict forms may cure an allegedly defective charging document, *see State v. Axley*, 132 Ariz. 383, 392, 646 P.2d 268, 277 (1982). Hargrave did not object to the armed robbery jury instruction and verdict forms and has failed to demonstrate fundamental error.

3.   Robbery lesser-included offense instruction

¶**33**        Hargrave next argues that the trial court erred by failing to instruct the jury on the lesser-included offense of robbery. A lesser-included offense instruction must be given, if requested, if the jury could find that (1) the state failed to prove an element of the greater offense, and (2) the evidence is sufficient to support a conviction on the lesser offense. *State v. Wall*, 212 Ariz. 1, 4 ¶ 18, 126 P.3d 147, 151 (2006); *cf. State v. Schad*, 163 Ariz. 411, 417, 788 P.2d 1162, 1168 (1989) (not requiring lesser-included offense instruction for

- 15 -

robbery serving as the predicate for felony murder in a capital case).  With Hargrave's consent, the trial judge instructed the jury on armed robbery and theft, but not simple robbery. Because Hargrave requested a robbery instruction, we review the trial court's refusal to give one for abuse of discretion. *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995).

¶34     A defendant commits robbery "if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property."  A.R.S. § 13-1902(A) (2010).  Armed robbery includes all these elements, and also requires that the defendant be "armed with a deadly weapon or a simulated deadly weapon."  A.R.S. § 13-1904(A)(1) (2010).

¶35     When the defendant is charged as an accomplice, we look to the accomplice's intent to aid the main actor.  *Wall*, 212 Ariz. at 4-5 ¶ 20, 126 P.3d at 151-52.  Hargrave argues that the jurors could have found that he did not intend to assist in an armed robbery because he did not know that Boggs planned to carry a gun.  The evidence shows, however, that Hargrave not only watched the victims while an armed Boggs obtained money from the cash registers, but also helped move the victims to the freezer and fired the murder weapon.  Although Hargrave did not

- 16 -

carry his own weapon during the robbery, he assisted Boggs in committing the armed robbery knowing that Boggs possessed a weapon, and he held the weapon and fired it.

¶36    Hargrave requested that the court give a lesser-included offense instruction either on robbery or theft, noting that, if the court were to give only one, he preferred an instruction on theft.  The trial court gave a theft instruction, based on Hargrave's claim that he and Boggs intended to steal money from the restaurant while Hargrave distracted the employees.  If, however, the jury found that more than a theft occurred and that the robbery element of force or threat was proven, a rational juror could not have found that the State failed to prove the additional element of armed robbery:  the presence of a weapon.  Boggs entered the restaurant brandishing a gun and Hargrave continued to assist him during the armed robbery.  The evidence thus did not support a lesser-included offense instruction on simple robbery, and therefore the trial court did not abuse its discretion in declining to give such an instruction.

4.    False imprisonment lesser-included offense instruction

¶37    Hargrave claims that the trial court erred by failing to instruct the jury on unlawful imprisonment as a lesser-included offense of kidnapping.  Because Hargrave did not request a lesser-included offense instruction, we review the

trial court's failure to give one only for fundamental error. *State v. Nordstrom*, 200 Ariz. 229, 253 ¶ 81, 25 P.3d 717, 741 (2001).

¶38    Unlawful imprisonment, defined as "knowingly restraining another person," A.R.S. § 13-1303(A) (2010), is a lesser-included offense of kidnapping, which is "knowingly restraining another person with the intent to [i]nflict death, physical injury or . . . otherwise aid in the commission of a felony," A.R.S. § 13-1304(A)(3) (2010).  The "distinguishing element between kidnapping and unlawful imprisonment is the perpetrator's state of mind, i.e., whether the unlawful imprisonment was accompanied with one of the enumerated intents set out in A.R.S. § 13-1304 so as to elevate the unlawful imprisonment to kidnapping."  *State v. Detrich*, 178 Ariz. 380, 383, 873 P.2d 1302, 1305 (1994); *see also State v. Bearup*, 221 Ariz. 163, 169 ¶ 24, 211 P.3d 684, 690 (2009).

¶39    Hargrave argues that the trial court should have instructed the jury on false imprisonment because the jury could have found he did not intend to harm the employees.  The evidence showed, however, that Hargrave intended to "aid in the commission of a felony" – the robbery – and knew that victims might be harmed.  *See* A.R.S. § 13-1304(A)(3).  He discussed the robbery plan with Boggs and knew that Boggs "always carrie[d] a gun."  Boggs had also warned Hargrave that "if it came down to

- 18 -

it, he would shoot [the employees]." Hargrave watched the victims as an armed Boggs took money from the cash registers, opened the door as Boggs marched the victims into the freezer, and fired the gun as the victims were directed into the freezer. He assisted Boggs in restraining the victims to aid in the commission of the armed robbery, which distinguishes kidnapping from unlawful imprisonment. *See id.* Hargrave has failed to demonstrate fundamental error.

### 5. Non-residential burglary sentence

¶40 The court sentenced Hargrave to fifteen years for third degree burglary, a dangerous crime. At the time of Hargrave's conviction, this crime carried a presumptive sentence of six years' imprisonment and a maximum sentence of eight years. A.R.S. § 13-604(F) (Supp. 2000) (subsequently re-enacted and renumbered as A.R.S. § 13-704(A) (2010)). The State concedes that the fifteen-year sentence is unlawful because it falls outside the statutory range. *See State v. House*, 169 Ariz. 572, 573, 821 P.2d 233, 234 (App. 1991). We remand Hargrave's burglary conviction for resentencing within the statutory range.

## B. Aggravation Phase Issues

### 1. Sufficiency of the evidence to support aggravators

¶41 Hargrave argues that the evidence was insufficient to prove the (F)(5) pecuniary gain and (F)(6) especially cruel aggravating factors. These claims are subsumed within our

- 19 -

independent review and are addressed in section III of this opinion. *See Andriano*, 215 Ariz. at 506 n.5, ¶ 41, 161 P.3d at 549 n.5.

2. <u>Constitutionality of (F)(6) especially cruel aggravating circumstance</u>

¶42    Hargrave argues that the A.R.S. § 13-751(F)(6) aggravating factor – murder committed in an "especially cruel" manner – is unconstitutionally vague, incapable of principled application, and arbitrary and capricious as applied. We review alleged constitutional violations de novo, *State v. McGill*, 213 Ariz. 147, 159 ¶ 53, 140 P.3d 930, 942 (2006), and when possible, construe statutes to uphold their constitutionality, *State v. Cromwell*, 211 Ariz. 181, 188 ¶ 38, 119 P.3d 448, 455 (2005).

¶43    The United States Supreme Court has found Arizona's (F)(6) aggravating circumstance facially vague, but held that it may be remedied with appropriate narrowing judicial constructions. *Walton v. Arizona*, 497 U.S. 639, 654-56 (1990), *overruled in part by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Ellison*, 213 Ariz. at 138 ¶ 96, 140 P.3d at 921. We have approved of jury instructions defining "especially cruel" as requiring evidence that the victim was conscious during the violence and that the defendant knew or should have known that the victim would suffer mental anguish or physical pain.

- 20 -

*Ellison*, 213 Ariz. at 139 ¶¶ 98-99, 140 P.3d at 922; *Cromwell*, 211 Ariz. at 189 ¶ 42, 119 P.3d at 456; *Anderson II*, 210 Ariz. at 352-53 n.19, ¶ 111, 111 P.3d at 394-95 n.19. We have also upheld instructions requiring that the victim experience "significant uncertainty" about his or her fate. *Cromwell*, 211 Ariz. at 189 ¶ 42, 119 P.3d at 456; *Anderson II*, 210 Ariz. at 352-53 n.19, ¶ 111, 111 P.3d at 394-95 n.19.

¶44    Hargrave argues that these limiting interpretations no longer save the (F)(6) aggravator from unconstitutional vagueness because juries, rather than judges, now find the existence of aggravating factors. *See* A.R.S. § 13-751(E). We rejected this argument in *Cromwell*, 211 Ariz. at 189-90 ¶¶ 41-42, 44, 119 P.3d at 456-57, and *Anderson II*, 210 Ariz. at 353 ¶¶ 112-14, 111 P.3d at 395.

¶45    The instruction here contained the essential narrowing factor that the defendant either knew or should have known that his actions would cause the victims mental anguish or physical pain before death. We upheld a nearly identical instruction in *State v. Tucker*, 215 Ariz. 298, 310-11 ¶¶ 30-31, 160 P.3d 177, 189-90 (2007), and find no reason to depart from that decision now. The only difference between the *Tucker* instruction and the one here is that in *Tucker*, the instruction stated that a crime is especially cruel if the "Defendant either intended or knew." Here, the instruction used the phrase "the defendant either knew

- 21 -

or should have known" that the crime would cause the victims to experience physical pain or mental anguish. This slight alteration does not deprive the instruction of the essential narrowing factor that maintains its constitutionality.

¶46     Hargrave also argues that the (F)(6) instruction is facially vague because it failed to properly channel the jurors' discretion by providing clear, objective standards. We have previously rejected this argument.[8] *E.g.*, *id.*

   3.   Jury instruction to not consider punishment at the aggravation phase

¶47     At the aggravation phase of the trial, the judge instructed the jury that "[i]n reaching your verdicts in this phase, you are not to consider the possible punishment." Hargrave argues that this instruction improperly relieved jurors of their duty to consider the gravity of their sentencing decision. Because Hargrave failed to object to this instruction, we review for fundamental error, *see Henderson*, 210

---

[8]     Hargrave also argues that the aggravator was arbitrarily and capriciously applied, in violation of the Fifth, Eighth, and Fourteenth Amendments. He claims that the expansion of the *Gretzler* list of factors "destroys the 'consistency' that preserved the constitutional validity of the statute." In *Gretzler*, we established factors to be considered when deciding if a murder was especially *heinous* or *depraved*. *State v. Gretzler*, 135 Ariz. 42, 51-52, 659 P.2d 1, 10-11 (1983). Although the verdict forms indicate that the murders were committed in an "especially cruel or depraved manner," the State did not present evidence of depravity and the jury was not instructed on depravity. Thus *Gretzler* is inapplicable. *See id.*

- 22 -

Ariz. at 567 ¶ 19, 115 P.3d at 607.

¶48        It is unconstitutional to minimize the importance of a capital sentencer's role in imposing the death penalty, *Caldwell v. Mississippi*, 472 U.S. 320, 328-29 (1985), or to make remarks that "improperly describe[] the role assigned to the jury by local law," *Dugger v. Adams*, 489 U.S. 401, 407 (1989). Under Arizona law, however, the jury does not consider punishment until the penalty phase of the trial, *see* A.R.S. § 13-752(F), and the instruction was therefore appropriate.

¶49        Moreover, during the penalty phase of the trial, the court clearly and correctly instructed the jurors, "[i]t is now your duty to determine whether the Defendant should be sentenced to death or life imprisonment on his convictions for first degree murder." The penalty phase instructions conveyed the gravity of the jurors' task:  "Your decision is not a recommendation.  Your decision will be binding.  If your verdict is that the Defendant should be sentenced to death, the Defendant will be sentenced to death."  These instructions adequately informed the jurors, at the appropriate time, of the gravity of their decision.

**C.   Penalty Phase Issues**

    1.   <u>Jury instruction regarding penalties applicable if the death sentence was not imposed</u>

¶50        Hargrave argues that the trial court improperly

instructed the jury at the aggravation and penalty phases of trial that he could be released after serving twenty-five years of a life sentence. He claims that telling the jurors that he could be released made them consider his future dangerousness as a factor in determining the sentence.

¶51    Because Hargrave failed to object to these instructions, we review for fundamental error. Ariz. R. Crim. P. 21.3(c); *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

¶52    Hargrave relies on *Simmons v. South Carolina*, in which the trial court instructed the jury that the defendant could be released on parole if not sentenced to death. 512 U.S. 154 (1994) (plurality opinion). In *Simmons*, however, the defendant was not eligible for parole because he had two prior felony convictions. *Id.* at 156. The trial court refused to inform the jury of the defendant's ineligibility for parole, despite Simmons' repeated requests for the instruction and even after the jury asked whether he could be released on parole if not sentenced to death. *Id*. at 160, 162. Because the prosecution in *Simmons* emphasized the defendant's future dangerousness if released, the Court found reversible error. *Id.* at 162.

¶53    In contrast, the instructions here correctly reflected the statutory potential for Hargrave's release. *See* A.R.S. § 13-751(A) (providing that a defendant not sentenced to death or natural life may not be released for twenty-five or thirty-

- 24 -

five years, depending on the age of the victim).  Unlike Simmons, Hargrave was eligible for release after twenty-five years, as the jury instruction correctly stated.  *See id.* Hargrave's argument that he is not likely to actually be released does not render the instruction legally incorrect.  *See State v. Cruz*, 218 Ariz. 149, 160 ¶¶ 41-42, 181 P.3d 196, 207 (2008); *see also Dann*, 220 Ariz. at 373 ¶¶ 123-24, 207 P.3d at 626 (upholding similar instructions as properly conveying the jury's sentencing options).  The jury instructions correctly stated the law, did not mislead the jurors about Hargrave's possible penalties, or deny Hargrave the benefit of mitigating evidence.

## 2.   Jury instruction regarding mitigation

¶**54**     After consulting his attorney, family, and outside counsel, Hargrave made a considered decision not to present mitigation evidence during the penalty phase of his trial, although he chose to allocute.  At the conclusion of the penalty phase, the judge instructed the jury, without objection, as follows:

> Both parties have had an opportunity to present additional evidence to you in the penalty phase. However, neither party was required to present additional evidence in the penalty phase.
>
> . . . .

. . . [T]he defendant had the opportunity to prove the existence of mitigating circumstances by a preponderance of the evidence.

The burden of proving the existence of mitigation is on the defendant.

¶55    Hargrave argues that these instructions improperly commented on the evidence and erroneously placed a burden on him to testify.  Because Hargrave failed to object, we review his claim for fundamental error.  *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

¶56    There was no error.  The instructions given correctly state the law.  Moreover, the trial court also instructed the jurors that (a) they must not consider the defendant's choice not to present mitigating evidence in their deliberations, (b) they "should give the defendant's statement [in allocution] as much weight as [they] feel it deserves under all the facts and circumstances of this case," and (c) they could "also consider any other relevant mitigation evidence presented during any phase of the trial, even if it was not proposed by either of the parties."

**D.    Post-Trial Issues**

1.    <u>Adequacy of the record on appeal</u>

¶57    Hargrave argues that the trial record is inadequate to allow proper appellate review because the trial court held several unrecorded bench conferences throughout the proceedings.

¶58 During jury selection, the parties held two unrecorded conferences without objection from the defense. The State argues that, by failing to object to these conferences, Hargrave waived any claim of error. We disagree. Hargrave filed a pretrial motion requesting a record of all trial proceedings, which the court granted, and he requested a standing objection to unrecorded bench conferences. *See State v. Sharp*, 193 Ariz. 414, 421 ¶ 22, 973 P.2d 1171, 1178 (1999).

¶59 During trial, the court held several other unrecorded bench conferences, despite repeated defense objections. When defense counsel asked to maintain a standing objection, the court noted the objection, but observed that it lacked the equipment to record bench conferences.

¶60 The court then began to make an after-the-fact record of each unrecorded conference and changed its practice regarding juror questions. The court's staff would show counsel the jurors' written questions, and if either party objected, the court would excuse the jury to allow counsel to state the reasons for any objections on the record. Hargrave argues that this practice forced him to object in front of the jury, in violation of Arizona Rule of Criminal Procedure 18.6(e), which requires that the court provide counsel an "opportunity . . . to *object* to such questions *out of the presence of the jury*." Ariz. R. Crim. P. 18.6(e) (emphasis added). The trial court, in

- 27 -

response, invited counsel to "ask for an opportunity to make a record," at which point he would excuse the jury so that counsel could state objections. Hargrave also notes other gaps in the record such as an unreported bench conference regarding an exhibit that the court subsequently admitted into evidence.

¶61       The court record must be sufficiently complete to allow "adequate consideration of the errors assigned." *State v. Moore*, 108 Ariz. 532, 534, 502 P.2d 1351, 1353 (1972) (citing *Draper v. Washington*, 372 U.S. 487 (1963)). We have disapproved of the practice of holding unrecorded bench conferences. *State v. Bay*, 150 Ariz. 112, 115, 722 P.2d 280, 283 (1986); *State v. Fletcher*, 149 Ariz. 187, 189, 717 P.2d 866, 868 (1986). Nevertheless, we have never required "the verbatim reporting of all bench conferences." *State v. Berndt*, 138 Ariz. 41, 46, 672 P.2d 1311, 1316 (1983).

¶62       The procedures here, while not ideal, sufficiently protected Hargrave's right to have a reviewable record. Despite failing to record all sidebar conferences, the trial judge did ensure that an adequate after-the-fact record was made of the discussions that occurred during each unrecorded conference and, as to each, he obtained defense counsel's assent that he had adequately described the discussions. By this procedure, the

trial court maintained a sufficient record for appeal.[9]

> 2. <u>Constitutionality of Arizona's method of execution by lethal injection</u>

¶63     Arizona administers the death penalty "by an intravenous injection of a substance or substances in a lethal quantity sufficient to cause death, under the supervision of the state department of corrections."  A.R.S. § 13-757(A) (2010). Hargrave argues that Arizona's method of execution by lethal injection fails to provide procedural safeguards that ensure a humane execution and is unconstitutionally cruel and unusual.

¶64     We have rejected the claim that Arizona's method of execution by lethal injection automatically constitutes cruel and unusual punishment. *See State v. Van Adams*, 194 Ariz. 408, 422 ¶ 55, 984 P.2d 16, 30 (1999).  Defendants seeking to challenge the lethal injection protocol must file a petition pursuant to Arizona Rule of Criminal Procedure 32.  *Andriano*, 215 Ariz. at 510 n.9, ¶ 62, 161 P.3d at 553 n.9.

## III.  INDEPENDENT REVIEW

¶65     Because Hargrave's crimes occurred before August 1,

---

[9]     Hargrave's counsel also argues that he did not waive his client's presence at the unreported bench conferences.  Although proceedings "held outside of the defendant's presence are fraught with danger and should be conducted, if at all, only for valid reasons and only where the record clearly shows that the defendant has waived his right to be present," *State v. McCrimmon*, 187 Ariz. 169, 171, 927 P.2d 1298, 1300 (1996), defense counsel acknowledged at one point below that the conferences Hargrave did not attend addressed only juror questions to which counsel did not object.

2002, we independently review the aggravating and mitigating circumstances and assess the propriety of the death sentences. A.R.S. § 13-755(A) (2010). In conducting independent review, "we consider the quality and the strength, not simply the number, of aggravating and mitigating factors." *State v. Roque*, 213 Ariz. 193, 230 ¶ 166, 141 P.3d 368, 405 (2006) (quoting *State v. Greene*, 192 Ariz. 431, 443 ¶ 60, 967 P.2d 106, 118 (1998)).

## A. Aggravating Circumstances

**¶66** The jury found three aggravating factors: (1) Hargrave committed the crime in expectation of pecuniary gain, A.R.S. § 13-751(F)(5), (2) the victims were murdered in an especially cruel manner, *id.* § 13-751(F)(6), and (3) multiple homicides were committed during the same criminal act, *id.* § 13-751(F)(8).

### 1. A.R.S. § 13-751(F)(5): Pecuniary gain

**¶67** A defendant convicted of first degree murder becomes "death eligible" if the state proves beyond a reasonable doubt that he "committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value." A.R.S. § 13-751(F)(5). Pecuniary gain motivates a crime "if the expectation of pecuniary gain is a motive, cause, or impetus for the murder and not merely a result of the murder." *State v. Lamar*, 210 Ariz. 571, 574 ¶ 11, 115 P.3d 611, 614 (2005) (quoting *State v. Hyde*, 186 Ariz. 252, 280, 921 P.2d

- 30 -

655, 683 (1996)).

¶68     The evidence established the pecuniary gain aggravator beyond a reasonable doubt.  Hargrave and Boggs entered the restaurant planning to steal money, cash was taken from two cash registers, an attempt to pry open a third register was unsuccessful, and credit cards and other items were taken from the victims.

¶69     Citing *State v. Milke*, 177 Ariz. 118, 127, 865 P.2d 779, 788 (1993), and *State v. Styers*, 177 Ariz. 104, 115, 865 P.2d 765, 776 (1993), Hargrave argues that the State did not establish the pecuniary gain aggravator because conflicting inferences may be drawn from the evidence.  The comparisons to *Milke* and *Styers* are unconvincing.  In this case, unlike *Milke* and *Styers*, substantial evidence demonstrates Hargrave's financial motivation for the murders.  He maintained throughout his interrogation that robbery was the underlying purpose of the crime.  The State's allegation of racism as an additional motive does not detract from the pecuniary gain motive, as pecuniary gain need be only one of the motives for the murders.  *See State v. Boggs*, 218 Ariz. 325, 340-41 ¶ 75, 185 P.3d 111, 126-27 (2008).

    2.   A.R.S. § 13-751(F)(6):  Especially cruel

¶70     A defendant is eligible for the death penalty if he commits first degree murder in "an especially heinous, cruel, or

- 31 -

depraved manner." A.R.S. § 13-751(F)(6). Only one of the three manners of killing need be shown to establish the aggravating circumstance. *State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896 (1980). Cruelty requires a showing that "the victim consciously experienced physical or mental pain prior to death, and the defendant knew or should have known that suffering would occur." *State v. Trostle*, 191 Ariz. 4, 18, 951 P.2d 869, 883 (1997) (citations omitted). Mental anguish "includes a victim's uncertainty about her ultimate fate." *State v. Kiles*, 175 Ariz. 358, 371, 857 P.2d 1212, 1225 (1993).

¶71    Hargrave argues that the evidence does not prove the (F)(6) aggravator because he did not actively participate in the murders and was not present when Boggs shot the victims. Hargrave's argument misstates the evidence and minimizes his participation. In his June 6 interrogation, Hargrave admitted that he held the freezer door open as the victims were ordered in at gunpoint, fired the murder weapon in the cooler just outside of the freezer, assisted in restraining the victims, and remained in the cooler while the shootings occurred.

¶72    Hargrave compares his case to *State v. Soto-Fong*, 187 Ariz. 186, 204, 928 P.2d 610, 628 (1996), in which we held that the state failed to prove the (F)(6) aggravating circumstance because the record did not establish the events leading up to the homicides. Unlike the situation in *Soto-Fong*, ample

- 32 -

evidence supports the finding of cruelty here: Hargrave admitted that he and Boggs forced the victims to lie down, empty their pockets, and later march into the freezer with their hands in the air. In the freezer, Boggs ordered the victims to turn around and shot them several times in rapid succession. In contrast to *Soto-Fong*, the record establishes that the victims here suffered uncertainty as to their ultimate fate.

¶73 The State also proved beyond a reasonable doubt the physical cruelty of two of the murders because victims B.A. and F.J. did not die immediately, but struggled to get help. B.A. suffered two gunshot wounds to her back, but managed to crawl from the freezer to the back door of the restaurant. When police arrived, she was lying on the ground, moaning and begging for help. F.J. was shot three times in the back, but still managed to crawl to the phone, dial 911, and "utter[] a few words." A trail of his blood leading from the freezer to the telephone indicated his consciousness after sustaining the gunshot wounds. This evidence establishes beyond a reasonable doubt that B.A. and F.J. suffered physical pain, that all three victims experienced mental suffering, and that Hargrave should have known that such suffering would occur.

   3.   A.R.S. § 13-751(F)(8):  Other homicides

¶74 To satisfy the A.R.S. § 13-751(F)(8) multiple homicides aggravating factor, the state must establish that a first degree

- 33 -

murder and at least one other homicide were "temporally, spatially, and motivationally related, taking place during one continuous course of criminal conduct." *Dann*, 220 Ariz. at 364 ¶ 57, 207 P.3d at 617.

¶75 The evidence established this aggravator beyond a reasonable doubt. The three victims were shot in close proximity and in rapid succession to facilitate an armed robbery. The murders therefore had a temporal, spatial, and motivational relationship that establishes the (F)(8) aggravator.

**B. Mitigating Circumstances**

¶76 Hargrave declined to present mitigating evidence at the penalty phase of the trial. He urges us to consider as mitigating both his decision to waive presentation of mitigation evidence and the statutory mitigating circumstances of youth, impaired mental condition, and relatively minor participation in the crimes. *See* A.R.S. § 13-751(G). Hargrave "must prove the existence of the mitigating circumstances by a preponderance of the evidence." *Id.* § 13-751(C).

1. Lack of mitigation at penalty phase

¶77 Hargrave contends that his decision not to present mitigation at trial prevents this Court from adequately reviewing his case. He relies on *State v. Cornell*, in which the record did not contain "all of the mitigating evidence and

- 34 -

circumstances that a reasonable investigation and preparation might have enabled counsel to present to the court and that might properly have been part of the record." 179 Ariz. 314, 335-36, 878 P.2d 1352, 1373-74 (1994). In *Cornell*, however, the defendant represented himself in the guilt phase of the trial, and because of his frequent invocation, then waiver, of his right to represent himself, his sentencing-phase counsel was not adequately prepared for the sentencing hearing. *Id.* at 335, 878 P.2d at 1373.

¶78 In contrast, Hargrave's defense counsel represented him throughout all phases of the trial. The defense made a strategic decision not to present mitigation evidence and made a thorough record regarding the mitigation strategy at the penalty phase: "[T]his is a decision I have not come to lightly. I discussed it with . . . several other attorneys and two mitigation specialists, including my client [and] his family. Everybody is in[] total agreement about my position." We accord defense counsel's strategic decision to not present mitigation no weight and conclude that it does not impair our ability to independently review the death sentence.

2.   Age

¶79 Hargrave was twenty-one years old at the time of the murders. Although youth "is entitled to great weight as a mitigating circumstance," *State v. Gerlaugh*, 144 Ariz. 449, 461,

- 35 -

698 P.2d 694, 706 (1985), we also consider the defendant's maturity, judgment, intelligence, and involvement in the crime, *State v. Herrera*, 174 Ariz. 387, 398, 850 P.2d 100, 111 (1993).

**¶80** We discount age as a mitigating factor when the defendant had a significant criminal record or actively participated in the murders. *State v. Poyson*, 198 Ariz. 70, 81 ¶ 39, 7 P.3d 79, 90 (2000). Hargrave was substantially involved in the armed robbery leading to the murders. He helped plan the robbery, and his uniform and previous employment provided the means to enter the restaurant. Once inside, Hargrave assisted Boggs in restraining the victims and moving them to the freezer where they were eventually shot, and Hargrave fired the murder weapon at least once.

**¶81** Hargrave also had a significant juvenile criminal record. By the time he was seventeen, he had already been adjudicated regarding eleven complaints, including charges for aggravated assault, burglary, and theft. We therefore give little weight to Hargrave's age as a mitigating circumstance.

### 3. Minor participation

**¶82** A mitigating circumstance exists if a "defendant was legally accountable for the conduct of another . . . but his participation was relatively minor, although not so minor as to constitute a defense to prosecution." A.R.S. § 13-751(G)(3). Hargrave argues that he was not the shooter and did not intend

- 36 -

to harm any of the victims when he entered the restaurant. The evidence shows, however, that Hargrave was not a minor participant. He helped plan and execute the robbery, using his work uniform to gain entry to the restaurant, even though Boggs had provided advance notice that he was prepared to shoot the employees "if it came down to it." Hargrave has not established by a preponderance of the evidence the mitigating circumstance of minor participation. *See Bearup*, 221 Ariz. at 175 ¶ 63, 211 P.3d at 696 (finding defendant a major participant even though he did not strike the death blows).

### 4. Mental impairment

¶83 Hargrave argues that his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 13-751(G)(1) (listing statutory mitigating circumstance of impaired mental health). He asks us to consider that the court originally found him incompetent to stand trial and committed him to the Arizona State Hospital to restore his competency. After Dr. Jason Lewis, a psychologist for the Restoration to Competency Program, concluded that Hargrave was competent to stand trial and had "malingered symptoms of psychosis and ignorance of the legal system," the trial court found that Hargrave had been restored to competency.

**¶84** In various examinations, Hargrave reported different information regarding his educational background and mental health history. He claimed to have attended college in some interviews; in others, he said he had only a GED-level education. In some interviews, he claimed to have auditory hallucinations, but did not report this symptom in other interviews. Dr. Lewis observed that "[t]he gross differences in the . . . reports of symptoms and history are suggestive of malingering." Indeed, all four of the mental health professionals who evaluated Hargrave found actual malingering or the possibility of malingering.

**¶85** Thus, even if we were to consider this mental health evidence, we do not find it sufficiently mitigating to call for leniency.

## C. Propriety of the Death Sentences

**¶86** The State established the (F)(5) "pecuniary gain" aggravator, the cruelty prong of the (F)(6) "cruel, heinous, or depraved" aggravator, and the (F)(8) "multiple murders" aggravator, which receives "extraordinary weight." *State v. Hampton*, 213 Ariz. 167, 185 ¶ 90, 140 P.3d 950, 968 (2006). Under the circumstances of this case, we do not find the mitigating evidence sufficiently substantial to warrant leniency and affirm the three death sentences imposed by the superior court. *See* A.R.S. § 13-755(B).

## IV. CONCLUSION

¶87     For the foregoing reasons, we affirm Hargrave's convictions and death sentences, and remand for resentencing on the burglary conviction.

_____
Rebecca White Berch, Chief Justice

CONCURRING:

_____
Andrew D. Hurwitz, Vice Chief Justice

_____
Michael D. Ryan, Justice

_____
W. Scott Bales, Justice

_____
A. John Pelander, Justice

## APPENDIX[10]

## Issues Raised to Avoid Federal Preclusion

For purposes of federal review, Hargrave raises the following fifteen challenges to the constitutionality of Arizona's death penalty scheme to avoid preclusion:

1. The fact-finder in capital cases must be able to consider *all* relevant mitigating evidence in deciding whether to give the death penalty. *See Woodson*, 428 U.S. 280, 304. The failure to allow this jury to consider and give effect to *all* mitigating evidence in this case by limiting its consideration to that proven by a preponderance of the evidence is unconstitutional. U.S. Const. Amends. VIII, XIV; *Contra State v. McGill*, 213 Ariz. 147, 161, ¶ 54, 140 P.3d 930, 944 (2006).

2. Aggravating factors under A.R.S. § 13-703(F) are elements of capital murder and must be alleged in an indictment and screened for probable cause. The State's failure to allege an element of a charged offense in the grand jury indictment — the aggravating factors making the Defendant death eligible — is a fundamental defect that renders the indictment constitutionally defective under U.S. Const. Amends. V, VIII, XIV; Ariz. Const. Art. II, §§ 1, 4, 13, 15, 23, 24. *See United States v. Chesney*, 10 F.3d 641 (9th Cir., 1993); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Contra McKaney v. Foreman*, 209 Ariz. 268, 100 P.3d 18 (2004).

3. *Ex post facto* laws are unconstitutional and prohibited. U.S. Const. Art. 1, § 10, Clause 1, Ariz. Const. Art. II, § 25; *State v. Noble*, 171 Ariz. 171, 173, 829 P.2d 1217, 1219 (1992). Application of the new death penalty to Defendant constitutes an impermissible *ex post facto* application of a new law. Rejected in *Ring III*, 204 Ariz. at 547, ¶ 23.

4. Allowing victim impact evidence at the penalty phase violated Defendant's constitutional rights. U.S. Const. Amends. V, VI, VIII, XIV; Ariz. Const. Art. II, §§ 1, 4, 13, 15, 23, 24. *Contra Lynn v. Reinstein*, 205 Ariz. 186, 68 P.3d 412 (2003); *State ex rel. Thomas v. Foreman*, 211 Ariz. 153, 118 P.3d 1117 (App. 2005).

---

[10] The Appendix is taken verbatim from Hargrave's list of issues raised to avoid preclusion.

5.    Arizona's capital sentencing scheme is unconstitutional because it does not require the State to prove the death penalty is appropriate or require the jury to find beyond a reasonable doubt that the aggravating circumstances outweigh the accumulated mitigating circumstances.    Instead, Arizona's death penalty statute mandates defendants to prove their lives should be spared violating U.S. Const. Amends. V, VI, VIII, XIV; Ariz. Const. Art. II, § 15; *Contra State v. Pandeli*, 200 Ariz. 365, at 382, ¶ 92, 26 P.3d 1136, at 1153 (2002), *vacated on other grounds*, 536 U.S. 953 (2002).

6.    Arizona's death penalty scheme does not sufficiently channel the sentencing jury's discretion.    Aggravating circumstances should narrow the class of persons eligible for the death penalty and reasonably justify the imposition of a harsher penalty.    A.R.S. § 13-703.01 is unconstitutional because it provides no objective standards to guide the jury in weighing the aggravating and mitigating circumstances.    The broad scope of Arizona's aggravating factors encompasses nearly anyone involved in a murder, violating U.S. Const. Amends. VIII, XIV; Ariz. Const. Art. II, § 15; *Contra Pandeli*, 200 Ariz. 365, 382, ¶ 90.

7.    The trial court improperly omitted from the penalty phase instructions words to the effect that jurors may consider mercy or sympathy in deciding the value to assign the mitigation evidence.    Instead it told them to assign whatever value the jury deemed appropriate and not to be influenced by mere "sentiment" or by prejudice in determining these facts. (I,378A).    This error limited the mitigation the jury could consider violating U.S. Const. Amends. V, VI, VIII, XIV; Ariz. Const. Art. II, §§ 1, 4, 15, 23, 24; *Contra State v. Carreon*, 210 Ariz. 54, 70-72, ¶¶ 81-87, 107 P.3d 900, 916-918 (2005).

8.    The death penalty is cruel and unusual under any circumstances and violates U.S. Const. Amends. VIII, XIV; Ariz. Const. Art. II, § 15; *Contra State v. Harrod*, 200 Ariz. 309, 320, ¶ 59, 26 P.3d 492, 503 (2001), *vacated on other grounds*, 536 U.S. 953 (2002).

9.    The death penalty is irrational and arbitrarily imposed, serving no purpose not adequately addressed by life in prison, in violation of the defendant's right to due process under the Fourteenth Amendment to the United States Constitution and Article 2, §§ 1 and 4 of the Arizona Constitution.    *Contra Pandeli*, 200 Ariz. 365, 382, ¶ 88.    *See also State v. Beaty*, 158 Ariz. 232, 247, 762 P.2d 519, 534 (1988).

10. The prosecutor's discretion to seek the death penalty has no standards violating U.S. Const. Amends. VIII, XIV; Ariz. Const. Art. II, §§ 1, 4, 15. *Contra Sansing*, 200 Ariz. 347, 361, ¶ 46, *vacated on other grounds by Ring II*, 536 U.S. at 584.

11. Arizona's death penalty is applied so as to discriminate against poor, young, and male defendants in violation of Ariz. Const. Art. II, §§ 1, 4, 13. *Contra Sansing*, 200 Ariz. at 361, ¶ 46. The U.S. Supreme Court recognizes, "drawing the line at 18 is subject to the objections always raised against categorical rules." *Roper v. Simmons*, 543 U.S. 551, 554 (2005). The *Roper* Court recognized three differences between juveniles and adults that rendered "suspect any conclusion that a juvenile falls among the worst offenders" that the death penalty should be reserved for. 543 U.S. at 570. Summarily, finding that a juvenile is no longer beset by those same differences simply because he has reached 18 years disregards "the concerns expressed in *Furman* that the penalty of death not be imposed in an arbitrary or capricious manner." *See Gregg*, 428 U.S. 153. Because "the line at 18" is arbitrary and capricious, execution by lethal injection of 21-year-old Christopher is cruel and unusual punishment that is fundamentally unfair violating U.S. Const. Amends. V, VIII, XIV; Ariz. Const. Art. II §§ 4, 15, 24.

12. Proportionality review serves to identify which cases are above the "norm" of first-degree murder, narrowing the class of defendants who are eligible for death. The absence of proportionality review of death sentences in Arizona denies capital defendants due process of law and equal protection amounting to cruel and unusual punishment in violation of U.S. Const. Amends. V, VIII, XIV; Ariz. Const. Art. II, § 15; *Contra Harrod*, 200 Ariz. at 320, ¶ 65.

13. Arizona's death penalty unconstitutionally requires imposition of the death penalty whenever at least one aggravating circumstance and no mitigating circumstances exist, in violation of t[sic] U.S. Const. Amends. VIII, XIV; Ariz. Const. Art. II, § 15. Arizona's death penalty law cannot constitutionally presume that death is the appropriate default sentence. *Contra State v. Miles*, 186 Ariz. 10, 19, 918 P.2d 1028, 1037 (1996).

14. Arizona's death penalty scheme is unconstitutional because it does not require the sentencer to find beyond a reasonable doubt that aggravating circumstances outweigh the accumulated mitigating circumstances, violating U.S. Const.

- 42 -

Amends. V, VIII, XIV; Ariz. Const. Art. II §§ 4, 15. *State v. Poyson*, 198 Ariz. 70, 83, 7 P.3d 79, 92 (2000).

15. The death penalty is the irreversible denial of human rights. The Eighth Amendment "draw'[s] [sic] its meaning from evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958); *see also*, *Roper*, 543 U.S. 551. The international community of nations has evolved to a state of maturity that abolishes the death penalty. Today, the majority of nations have abolished the death penalty. Amnesty International, *Facts and Figures on the Death Penalty* (January 1, 2006). The Universal Declaration of Human Rights, GA Res. 217A (III), U.N. GAOR, 3d Sess. Art. 3, U.N. Doc. A/810 (1948), provides that "Everyone has the right to life, liberty, and security of person." The death penalty violates the Universal Declaration of Human Rights. Christopher's death sentence not only violates the Eighth and Fourteenth Amendments of the U.S. Constitution but international law as the majority of civilized nations bar the death penalty. This Court previously held that the death penalty is not unconstitutional or violative of international law. *State v. Ross*, 180 Ariz. 598, 602, 886 P.2d 1354, 1358 (1994). Hargrave disagrees.