SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-09-0343-AP |
| Appellee, | ) | |
| | ) | Mohave County |
| v. | ) | Superior Court |
| | ) | No. CR20060904 |
| BRAD LEE NELSON, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |


Appeal from the Superior Court in Mohave County
The Honorable Richard Weiss, Judge

**AFFIRMED**
_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                    Phoenix
      By   Kent E. Cattani, Chief Counsel
           Criminal Appeals/Capital Litigation Section
           Julie A. Done, Assistant Attorney General
Attorneys for State of Arizona

DAVID GOLDBERG ATTORNEY AT LAW                    Fort Collins, CO
      By   David Goldberg
Attorney for Brad Lee Nelson
_____

**B R U T I N E L**, Justice

¶1      In 2009, a jury found Brad Lee Nelson guilty of first-degree murder of his niece, Amber, and determined he should be sentenced to death.  We have jurisdiction over this automatic appeal under Article 6, Section 5(3) of the Arizona Constitution

and A.R.S. §§ 13-4031 and -4033(A)(1) (2010).[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

¶2      In June 2006, Nelson was caring for fourteen-year and ten-month old, Amber, and thirteen-year-old, Wade, at a motel in Kingman, Arizona, while the children's mother, Nelson's half-sister, was in the hospital.  On the day of the murder, Nelson left the motel room and walked to a nearby Kmart, where he purchased a rubber mallet.  Nelson returned to the motel and, while Wade slept, hit Amber in the head with the mallet and covered her with the blanket on the bed.

¶3      When Wade awoke, he noticed Amber was still in bed and under the covers.  Wade then walked to the Kmart with Nelson, who bought a new shirt.  When they left the store, Nelson changed into the new shirt, placing the one he had been wearing in a plastic bag.  They went next door to a truck stop, and when they left, Nelson no longer had the plastic bag.  He told Wade he must have left it in the bathroom at the truck stop and went back inside.  He returned without the bag and suggested that "some homeless guy" might have taken it.

¶4      Nelson and Wade then returned to the motel.  Amber was

---

[1]     This opinion cites the current version of statutes, unless otherwise noted.

[2]     We view the facts "in the light most favorable to upholding the verdicts."  *State v. Chappell*, 225 Ariz. 229, 233 ¶ 2 n.1, 236 P.3d 1176, 1180 n.1 (2010).

2

still in bed under the covers. Nelson rolled up the sleeping bag he had been using and told Wade he wanted to return it to the Kmart. On the way out, Nelson told a housekeeper "not to disturb [his] niece because [they] ha[d] a noon checkout." Nelson and Wade then returned the sleeping bag.

¶5     Upon returning to the motel, Nelson and Wade met a housekeeper who accompanied them to their room. When they reached the room, Wade pulled the covers off Amber. She was blue, had foam and blood coming out of her mouth, was naked from the waist down, and bleeding from her forehead. The housekeeper called 911, but police and paramedics could not revive Amber.

¶6     Police officers found a bloody black sock containing a rubber mallet hidden under the bed. They also found men's jeans with blood on them. The sock and jeans contained DNA from both Amber and Nelson. Police also found Amber's pants "turned inside out, with the panties still within them and the socks within the legs of the pants" as if "somebody had pulled them off." Investigating officers located the shirt Nelson left at the truck stop and the sleeping bag he had returned to the Kmart. Both had Amber's blood on them.

¶7     The medical examiner determined that the cause of Amber's death was "blunt force trauma to the head." The medical examiner found Nelson's semen on Amber's body.

¶8     Nelson was charged with first-degree murder and child

3

molestation. He admitted killing Amber, but argued it was not premeditated. After the State rested in the trial's guilt phase, the superior court granted Nelson's motion for judgment of acquittal as to child molestation and felony murder. The jury found Nelson guilty of premeditated first-degree murder. The jury then found proven beyond a reasonable doubt the only aggravator alleged, that Nelson was an adult and Amber was under fifteen years old at the time of the murder. A.R.S. § 13-751(F)(9). In the penalty phase, the jury determined that Nelson should be sentenced to death.

## II. ISSUES ON APPEAL

### A. Alleged violation of right to fair and impartial jury

¶9 Nelson argues he was deprived of a fair and impartial jury because the trial court did not specifically ask potential jurors about contact they may have had with Juror 56, who was excused. Because Nelson did not raise this issue below, we review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567 ¶ 19, 115 P.3d 601, 607 (2005).

¶10 When potential jurors were summoned to the Mohave County Courthouse, the judge admonished them to ignore media coverage; warned that newspaper, radio, and TV coverage is not evidence; and advised them to alert the court if they were exposed to any type of media coverage. During individual voir dire, Juror 56 said he had "looked up as much information as

4

[he] could on the Internet" about the case because his teenage daughter had been killed and he had very strong feelings "about another young person being killed." Both parties agreed to excuse him.

¶11    The court continued individual voir dire, questioning each juror regarding prior knowledge about the case. Juror 60 referred to Juror 56, stating that he seemed nervous as he was leaving and she "guess[ed] his circumstances were a little crazy." When asked specifically if she had learned anything about the case, she said no. Thirteen more potential jurors were questioned, and none reported that Juror 56 had said anything about the case. Nelson subsequently struck Juror 60.

¶12    Juror misconduct necessitates "a new trial only if 'the defense shows actual prejudice or if prejudice may be fairly presumed from the facts.'" *State v. Davolt*, 207 Ariz. 191, 208 ¶ 58, 84 P.3d 456, 473 (2004) (quoting *State v. Miller*, 178 Ariz. 555, 558, 875 P.2d 788, 794 (1994)) (emphasis and internal citation omitted). "In a criminal case, prejudice may be presumed from 'any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury.'" *Id.* (quoting *Remmer v. United States*, 347 U.S. 227, 229 (1954)). But "[p]rejudice cannot be presumed without the requisite showing that the jury received and considered extrinsic evidence on the issues." *Id.*

¶ 59.

¶13    Nelson has not shown prejudice, nor may it be presumed here. Juror 56 was excused, and the record does not suggest he shared any information about the case with other potential jurors.

**B. Substantial evidence of premeditated first degree murder**

¶14    Nelson next argues that his conviction should be vacated because the State's evidence shows only passage of time but not the actual reflection required for premeditation.

¶15    "Premeditation" is statutorily defined as follows:

> [T]hat the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by any length of time to permit reflection. Proof of actual reflection is not required, but an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

A.R.S. § 13-1101(1). As we made clear in *State v. Thompson*, 204 Ariz. 471, 478 ¶ 27, 65 P.3d 420, 427, "the legislature did not intend to eliminate the requirement of reflection altogether or to allow the state to substitute the mere passing of time for the element of premeditation," but rather "intended to relieve the state of the burden of proving a defendant's thought processes by direct evidence."

¶16    Premeditation can, of course, be proved by circumstantial evidence. *Thompson*, 204 Ariz. at 478-79 ¶¶ 27, 31, 65 P.3d at 427-28. Nelson left to procure a weapon and

6

killed Amber with it within the same hour.  Circumstantial evidence supporting a finding of premeditation may include "the acquisition of a weapon by the defendant before the killing." *Id.* at 479 ¶ 31, 65 P.3d at 428.  "Carrying the murder weapon to the scene is strong evidence of premeditation. . . . Leaving the scene to retrieve a weapon is even stronger evidence of premeditation because it suggests that [the defendant] had formed a plan for committing the murder[] and then set about carrying it out." *United States v. Begay*, ___ F.3d ___, 2011 WL 94566, at *4 (9th Cir. Jan. 12, 2011) (en banc) (citations omitted)*; see also State v. Pittman*, 118 Ariz. 71, 75, 574 P.2d 1290, 1294 (1978) (finding premeditated murder conviction supported by evidence that defendant entered victim's house with gun and then shot the victim three times).

¶17    Nelson claims that "[t]his is not a case where the defendant went and obtained a gun, a knife or some other 'deadly weapon.'"  We disagree.  "Although in an ordinary context, a hammer is usually considered a tool, not a weapon, in many instances assailants have used hammers to perpetrate a deadly attack."  *State v. Beard*, 46 P.3d 1185, 1194 (Kan. 2002).  Moreover,

> [b]ecause hitting someone with a hammer will very likely result in extensive injury or death to the victim, a hammer may be considered just as deadly when used as a weapon as a pipe, baseball bat, knife, or gun.  Thus, the use of the hammer as a weapon of

attack may lend support to the inference of premeditation.

*Id.* at 1195.

¶18     A defendant's actions after a murder can also help establish premeditation. *See, e.g.*, *Beard*, 46 P.3d at 1195; *State v. Sierra*, 440 S.E.2d 791, 795 (N.C. 1994). Nelson hid the murder weapon under a bed, disposed of his bloody shirt, and returned a sleeping bag that had Amber's blood on it.

¶19     Although the evidence of premeditation in this case is circumstantial, it is nonetheless substantial. The jury's finding of premeditation was not legally incorrect.

## C. Premeditation jury instruction and argument

¶20     Nelson asserts that the trial court gave the jury an erroneous premeditation instruction and that instruction, "coupled with the prosecutor's closing arguments," require reversal.

¶21     We review de novo "whether the jurors were properly instructed." *State v. Dann*, 220 Ariz. 351, 364 ¶ 51, 207 P.3d 604, 617 (2009). Because Nelson did not object to either the premeditation instruction or the prosecutor's arguments regarding premeditation, we review only for fundamental error. *See Dann*, 220 Ariz. at 364 ¶ 51, 207 P.3d at 617; *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

¶22     The trial court gave the following jury instruction:

8

'Premeditation' means that the defendant intended to kill another human being or knew he would kill another human being and that after forming that intent or knowledge reflected on the decision before killing.

It is this reflection, regardless of the length of time in which it occurs, that distinguishes first degree murder from second degree murder.

An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

The time needed for reflection is not necessarily prolonged, and the space of time between the intent or knowledge to kill and the act of killing may be very short.

This instruction is nearly identical to the one prescribed in *Thompson*, 204 Ariz. at 479 ¶ 32, 65 P.3d at 428. Although we cautioned there that the instruction's last sentence need be given only when the facts "require it," *id.*, *Thompson* does not suggest that giving the entire instruction constitutes error. Under the facts of this case, in which Nelson admitted the murder but denied premeditation, the instruction was not fundamental error.

¶23 Nor did the prosecutor incorrectly argue premeditation. The prosecutor noted that the time to reflect may be short and highlighted the circumstantial evidence and "decisions" made by Nelson: to leave the motel, to walk to the store, to buy the mallet, to walk back to the room, and to hit Amber with the mallet. *See id.* at 480 ¶ 33, 65 P.3d at 429. The prosecutor did not suggest passage of time alone was sufficient to prove premeditation. *See State v. Kiles*, 222

9

Ariz. 25, 31 ¶ 21, 213 P.3d 174, 180 (2009) (finding no fundamental error in prosecutor's arguments "that the time required to actually premeditate could be 'instantaneous,'" because "he made clear that such was not the case in this matter [and h]is argument focused on the circumstantial evidence of premeditation").

## D. Failure to instruct the jury on manslaughter

¶24 Nelson next argues that the trial court's refusal to give a requested lesser-included manslaughter jury instruction was error. However, the trial court did instruct on second-degree murder. Thus, any purported error in failing to give a manslaughter instruction was harmless. When a jury is given a choice between first-degree murder and second-degree murder and convicts on first-degree murder, it has necessarily rejected manslaughter. *See State v. Amaya-Ruiz*, 166 Ariz. 152, 174, 800 P.2d 1260, 1282 (1990); *State v. White*, 144 Ariz. 245, 247, 697 P.2d 328, 330 (1985).

## E. Constitutionality of (F)(9) aggravator

¶25 Nelson contends that "[t]he (F)(9) aggravating circumstance is arbitrary and capricious in violation of the Eighth and Fourteenth Amendment[s] on its face and as applied to [him] because it fails to adequately and rationally narrow those defendants subject to the death penalty." He also argues under the Eighth Amendment that sentencing him "to death based solely

upon the (F)(9) aggravator is cruel and unusual punishment." We review de novo the constitutionality of statutory aggravating factors. *See State v. Hargrave*, 225 Ariz. 1, 13 ¶ 42, 234 P.3d 569, 581 (2010).

### 1. Arbitrary and capricious

¶26    Nelson argues that the (F)(9) aggravator draws an "arbitrary" and "irrational" distinction at age fifteen and is "not based upon any factual or constitutionally meaningful distinction." A death penalty sentencing scheme "'must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Romano v. Oklahoma*, 512 U.S. 1, 7 (1994) (quoting *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988)). "The eighth amendment requires that the sentencer's discretion be channeled and limited to avoid the risk of wholly arbitrary and capricious action." *State v. Hinchey*, 165 Ariz. 432, 436, 799 P.2d 352, 356 (1990). Aggravating circumstances "'play a significant role in channeling the sentencer's discretion.'" *State v. Mata*, 185 Ariz. 319, 323, 916 P.2d 1035, 1039 (1996) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 774 (1990)). To be valid, aggravating "circumstance[s] may not apply to every defendant convicted of murder" and "may not be unconstitutionally vague." *Tuilaepa v. California*, 512 U.S. 967, 972 (1994).

11

¶27     The aggravator in this case was that "[t]he defendant was an adult at the time the offense was committed . . . and the murdered person was under fifteen years of age."  A.R.S. § 13-751(F)(9).  This aggravating circumstance meets constitutional requirements.  First, as Nelson concedes, it does not apply to every murder.  Nor is the (F)(9) aggravator vague.  "It is difficult to imagine an aggravating factor less susceptible than (F)(9) to a challenge on the grounds of vagueness or overbreadth." *Jones v. Schriro*, 450 F. Supp. 2d 1047, 1078 (D. Ariz. 2006).  It provides a bright line factor based on the age of the victim and the age of the offender.

### 2. Equal protection and due process

¶28     Nelson next contends that "[t]he (F)(9) aggravator violates equal protection and due process under the Fourteenth Amendment."  He argues that the state does not have a compelling or rational basis for executing a defendant who kills someone fourteen years and ten months old and sparing the life of those who kill someone fifteen years and one day old.  We have previously held, however, that the legislature had a rational basis for creating the (F)(9) aggravator:

> [T]he age of a victim is an appropriate aggravating factor because a rational basis exists for it.  By adopting the (F)(9) factor, the legislature determined that the young and old are especially vulnerable and should be protected.  It is not irrational for the legislature to conclude that murders of children and the elderly are more abhorrent than other first-degree

12

> murders.    Thus,  in  the  absence  of  sufficient
> mitigating factors, murders of this sort should be
> punished more severely.    In addition, the age of the
> victim is relevant to an inquiry into the defendant's
> characteristics and propensities.    Those who prey on
> the very young or the very old are more dangerous to
> society.

*State v. Smith*, 193 Ariz. 452, 462 ¶ 48, 974 P.2d 431, 441 (1999).

### 3. Cruel and unusual punishment

¶29    Nelson also argues that sentencing him to death based solely on the (F)(9) aggravating circumstance is cruel and unusual punishment.  He makes two separate claims: (1) that we must conduct a proportionality review and hold that his sentence is grossly disproportionate to his crime, and (2) that we should also compare this aggravator to age-based aggravators in other states and find it invalid.

¶30    Although we once conducted proportionality review to determine "whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant," *State v. Richmond*, 114 Ariz. 186, 196, 560 P.2d 41, 51 (1977), we discontinued the practice in 1992 because proportionality review is fraught with problems and not constitutionally required, *State v. Salazar*, 173 Ariz. 399, 416-17, 844 P.2d 566, 583-84 (1992); *see also Pulley v. Harris*, 465 U.S. 37, 50-51 (1984) (holding that the Eighth Amendment does not require "comparative proportionality

13

review by an appellate court"). We decline to do so in this case as well.

¶31　　Nelson also contends that because this murder would satisfy the age-based capital aggravator in only four jurisdictions,[3] a national consensus exists that a sentence of death based on the murder of a child under fifteen constitutes cruel and unusual punishment. Nelson argues that we should find a categorical restriction on imposing the death penalty when the single aggravator found is based on the age of the victim, using the analysis in *Graham v. Florida*, 130 S. Ct. 2011 (2010). *Graham*, however, acknowledges two subsets of categorical rules against the death penalty, one determining that capital punishment is impermissible for nonhomicide crimes against individuals and the other turning on the offender's characteristics. *Id.* at 2022. Neither applies here. There is no categorical rule precluding the imposition of the death penalty on the basis of an otherwise constitutional statutory aggravator.

¶32　　Even if we assume *Graham* supplies the proper analysis for challenging an aggravator, such a challenge fails here. Under *Graham*, a court "considers 'objective indicia of society's

_____

[3]　　Nelson could be sentenced to death in Arizona, A.R.S. § 13-751(F)(9), New Hampshire, N.H. Rev. Stat. Ann. § 630:5(VII)(g) (2011), Wyoming, Wyo. Stat. Ann. § 6-2-102(h)(ix) (2011), and under federal law, 18 U.S.C. § 3592(c)(11) (2006).

14

standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue." 130 S. Ct. at 2022 (quoting *Roper v. Simmons*, 543 U.S. 551, 572 (2005)). In the past decade, the Supreme Court has used this approach in three death penalty cases. *See Kennedy v. Louisiana*, 554 U.S. 407, 446 (2008) (concluding the death penalty cannot be imposed for rape); *Roper*, 543 U.S. at 578 (holding "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of [eighteen] when their crimes were committed"); *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding "that the execution of mentally retarded criminals" violates the Eighth Amendment).

¶33    Admittedly, Nelson would be eligible for death in fewer jurisdictions than were the defendants in *Atkins*, *Roper*, and *Kennedy*. But those cases turned on the characteristics of the defendant or the nature of the crime, not the identity of the victim. Currently thirty-five out of fifty-two jurisdictions (including the United States and Washington, D.C.) have the death penalty. In seventeen of these jurisdictions, murdering a victim of a certain age alone qualifies a person for the death penalty.[4] Eleven jurisdictions consider the victim's

---

[4]    18 U.S.C. § 3592(c)(11) (2006); A.R.S. § 13-751(F)(9) (2010); Ark. Code Ann. § 5-4-604(10)(B) (2011); Colo. Rev. Stat.

15

age as an aggravator with additional qualifying circumstances.[5]

§ 18-1.3-1201(5)(m) (2012); Del. Code Ann. tit. 11 § 4209(e)(1)(s) (2011); Fla. Stat. § 921.141(5)(*l*) (2012); Ind. Code Ann. § 35-50-2-9(b)(12) (West 2011); La. Code Crim. Proc. Ann. art. 905.4(A)(10) (2011); Nev. Rev. Stat. § 200.033(10) (2010); N.H. Rev. Stat. Ann. § 630:5(VII)(g) (2011); Ohio Rev. Code. Ann. § 2929.04(A)(9) (West 2011); 42 Pa. Cons. Stat. § 9711(d)(16) (2011); S.C. Code Ann. § 16-3-20(C)(a)(10) (2011); S.D. Codified Laws § 23A-27A-1(6) (2012); Tenn. Code Ann. § 39-13-204(i)(1) (2012); Utah Code Ann. § 76-5-202(1)(t)(i) (West 2011); Wyo. Stat. Ann. § 6-2-102(h)(ix) (2011).

[5]  Ala. Code. §§ 13A-5-40(a)(15), -45(f), -49 (2012) (stating an additional aggravator must be present when victim is less than fourteen-years-old); Cal Penal Code § 190.2(a)(17)(E) (West 2012) (committing first degree murder during commission of sexual crime on child under fourteen years old makes defendant eligible for death penalty); Conn. Gen. Stat. §§ 53a-46a, -54b(8) (2012) (providing that another aggravating circumstance must be proven when victim less than sixteen years old); Idaho Code Ann. § 19-2515(9)(h) (2012) (listing as an aggravating circumstances that the murder was committed during perpetration of sex crime against a child); Kan. Stat. Ann. § 21-5401 (2011) (stating murder of a victim under fourteen years old during commission of another enumerated felony constitutes capital murder); Md. Code Ann., Crim. Law. § 2-303(g)(v) (West 2012) (listing as an aggravator murder of an illegally abducted child under twelve years old); Miss. Code Ann. § 99-19-101(5)(d) (2011) (providing that murder of child under twelve years old committed during "unnatural intercourse" or "felonious abuse and/or battery" constitutes an aggravator); Mont. Code Ann. § 46-18-303(1)(a)(vi) (2011) (stating that deliberate murder of victim under age eighteen during commission of sex crime constitutes aggravating circumstance); Or. Rev. Stat. §§ 163.095(1)(f), 163.150(1)(b) (2012) (stating "aggravated murder" of child under fourteen years old and three additional factual findings makes defendant eligible to receive death penalty); Tex. Penal Code Ann. § 19.03(a)(8) (West 2011), Tex. Code of Crim. Pro. Art. 37.071, § 2(b) (West 2011) (qualifying defendant for death sentence when murder victim is less than ten years old and additional factual predicates are shown); Va. Code. Ann. §§ 18.2-31(12), 19,2-264.2 (2011) (stating willful, deliberate, and premeditated murder of victim less than fourteen years old by defendant who is over twenty-one years old along

Thus, in twenty-eight of the thirty-five jurisdictions, age of the victim is a factor in sentencing a defendant to death. This shows consensus that the victim's age is relevant in determining whether a person who commits murder deserves the death penalty.

¶34 To be sure, states use different ages in their capital aggravation statutes, and there is no clear consensus on what age should trigger eligibility. It is the legislature's province, however, to determine at what ages child victims are most vulnerable. The Arizona Legislature has set the age at fifteen, well within the range of other jurisdictions. *Compare* S.C. Code Ann. § 16-3-20(C)(a)(10) (2011) (eleven years old), *with* Wyo. Stat. Ann. § 6-2-102(h)(ix) (2011) (seventeen years old).

**F. Alleged prosecutorial misconduct**

¶35 Nelson claims that the prosecutor committed misconduct by making "irrelevant and inflammatory arguments" during the penalty phase closing argument. The trial court denied Nelson's motions for mistrial and to vacate the judgment based on this alleged misconduct.

¶36 These rulings are reviewed for an abuse of discretion, *State v. Speer*, 221 Ariz. 449, 457 ¶ 42, 212 P.3d 787, 795 (2009), "because the trial judge is always in the best position

with additional factual considerations qualifies defendant for death penalty).

17

to determine whether a particular incident calls for a mistrial," *State v. Koch*, 138 Ariz. 99, 101, 673 P.2d 297, 299 (1983). Nelson objected to each instance of alleged prosecutorial misconduct, so we first address whether misconduct occurred and, if so, review for harmless error. *See Dann*, 220 Ariz. at 373 ¶ 125, 207 P.3d at 626. This Court will reverse only if there is "a reasonable likelihood . . . that the misconduct could have affected the jury's verdict, thereby denying the defendant a fair trial." *Speer*, 221 Ariz. at 458 ¶ 42, 212 P.3d at 796 (internal quotation marks omitted).

## 1. Motion for mistrial

¶37 Nelson argues that the prosecutor committed misconduct by using language related to the (F)(6) (heinous, cruel, or depraved) aggravator, which the State did not allege, and by describing the impact of Amber's death on her family and other witnesses to the crime.

¶38 "Prosecutorial misconduct constitutes reversible error only if (1) misconduct exists and (2) 'a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial.'" *State v. Morris*, 215 Ariz. 324, 335 ¶ 46, 160 P.3d 203, 214 (2007) (quoting *State v. Anderson (Anderson II)*, 210 Ariz. 327, 340 ¶ 54, 111 P.3d 369, 382 (2005)). "Prosecutorial misconduct is harmless error if we can find beyond a reasonable doubt it did

18

not contribute to or affect the verdict." *State v. Roque*, 213 Ariz. 193, 228 ¶ 152, 141 P.3d 368, 403 (2006) (internal quotation omitted).[6]

¶39      In deciding whether an argument is misconduct, we "consider two factors: (1) whether the prosecutor's statements called to the jury's attention matters it should not have considered in reaching its decision and (2) the probability that the jurors were in fact influenced by the remarks." *State v. Newell*, 212 Ariz. 389, 402 ¶ 60, 132 P.3d 833, 846 (2006).  This Court looks at the context in which the statements were made as well as "the entire record and to the totality of the circumstances." *State v. Rutledge*, 205 Ariz. 7, 13 ¶ 33, 66 P.3d 50, 56 (2003).

### a. Use of (F)(6) aggravator terms

¶40      Five factors are used to determine "whether a defendant's conduct is heinous or depraved: (1) defendant relished the murder; (2) needless mutilation of the victim; (3) gratuitous violence beyond that necessary to kill; (4) helpless

---

[6]      The State asserts that Nelson timely objected to only one of the words traditionally used to the describe the (F)(6) aggravator.  Nelson, however, preserved his objection to all terms.  When Nelson's counsel objected, he approached the bench and argued that the use of all words like "senseless" and "helpless" were improper and had nothing to do with the (F)(9) aggravator.  This objection timely allowed "the trial court to rectify possible error, and . . . enable[d] the [State] to obviate the objection if possible." *State v. Rutledge*, 205 Ariz. 7, 13 ¶ 30, 66 P.3d 50, 56 (2003) (internal quotation omitted).

19

victim; and (5) senseless crime." *State v. Greenway*, 170 Ariz. 155, 166, 823 P.2d 22, 33 (1991) (citing *State v. Gretzler*, 135 Ariz. 42, 52-53, 659 P.2d 1, 11-12 (1983)).  In her penalty phase closing argument, the prosecutor described Amber as "a helpless victim;" asked "why did he have to kill her?;" and noted the brutality of the murder.  Although it is improper to argue a non-alleged aggravating circumstance, *see State v. Combs*, 581 N.E.2d 1071, 1077 (Ohio 1991), that is not what occurred here.

¶41    The words the prosecutor used fairly described the facts of the case.  *See State v. Garza*, 216 Ariz. 56, 68 ¶ 57, 163 P.3d 1006, 1018 (2007) (noting that "jury may consider the circumstances of the crime in its evaluation of mitigation" in the penalty phase).  The term "helpless" described both Amber's age and the circumstances of the crime.  Asking "why did he kill her?" also related to the fact that Amber had done nothing to provoke Nelson's attack.  Describing the brutality of Amber's murder also bore on the facts of the case.  Although "helpless" and "senseless" are terms used to describe the (F)(6) aggravator, the prosecutor did not suggest its existence by using these words, nor did she argue that such an aggravator be considered.  Moreover, the jury was unaware of the legal significance of these words because the State did not allege and the court did not instruct on the (F)(6) aggravator.

### b. Victim and witness impact evidence

¶42    Nelson also contends that the prosecutor committed misconduct by discussing the impact of Amber's death on her family and other witnesses.  In *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), the Supreme Court held that a court may, consistent with the Eighth Amendment, permit admission of "evidence about the victim and about the impact of the murder on the victim's family" in a capital trial because it "is relevant to the jury's decision as to whether or not the death penalty should be imposed."  The Court noted that "there is nothing unfair about allowing the jury to bear in mind [the] harm [caused by the defendant] at the same time as it considers the mitigating evidence introduced by the defendant."  *Id.* at 826.

¶43    Although the State did not present victim impact evidence during the penalty phase, Amber's brother Wade testified in the guilt phase, and Nelson presented a video-taped interview of Amber's mother during the penalty phase.  The prosecutor's arguments referred solely to this testimony. Statements referring to the victim's family members are not improper under *Payne* if they are supported by the evidence, even if victim impact evidence was not presented in the penalty phase.  *See Williams v. State*, 684 So. 2d 1179, 1204 (Miss. 1996); *see also People v. Dykes*, 209 P.3d 1, 49-50 (Cal. 2009) ("In closing argument, a prosecutor may rely upon the impact of

21

the victim's death on his or her family."). Such arguments are proper as long as emotion does not "reign over reason." *Dykes*, 209 P.3d at 50 (internal quotation omitted).

¶44    The prosecutor also discussed the impact of viewing Amber's body on several witnesses. Arguments aimed solely at the jury's emotions are improper. *See State v. Herrera*, 174 Ariz. 387, 396, 850 P.2d 100, 109 (1993). Here, the trial court recognized argument about how the viewing of Amber's body affected certain witnesses was improper.

¶45    Any error, however, was cured by the trial judge, who sustained a defense objection to the argument and instructed the jury to not consider the argument. We presume jurors follow their instructions. *State v. Tucker*, 215 Ariz. 298, 319 ¶ 89, 160 P.3d 177, 198.

¶46    Moreover, the improper argument took up less than one page out of more than twenty pages of transcript in the State's closing argument. After the limiting instruction, the prosecutor did not continue the improper line of argument but focused instead on the mitigation evidence. The trial court did not abuse its discretion in denying the motion for mistrial.

## 2. Motion to vacate judgment

¶47    After trial, Nelson moved to vacate the judgment, submitting an affidavit from a juror stating that the jury did not follow instructions and that the juror felt "emotionally

22

sabotaged" by the State's closing argument. The motion is appropriately considered as one for a new trial under Arizona Rule of Criminal Procedure 24.1. A court may grant a new trial if a juror or jurors have committed misconduct. Ariz. R. Crim. P. 24.1(c)(3). Juror affidavits are admissible to challenge a verdict, but "[n]o testimony or affidavit shall be received which inquires into the subjective motives or mental processes which led a juror to assent or dissent from the verdict." *Id.* 24.1(d).

¶48    The Arizona rule reflects a policy long followed by courts nationwide. "The general rule, known as Lord Mansfield's rule, is that a juror's testimony is not admissible to impeach the verdict." *State v. Dickens*, 187 Ariz. 1, 15, 926 P.2d 468, 482 (1996). The rule serves "to protect the process of frank and conscientious jury deliberations and the finality of jury verdicts." *State v. Poland*, 132 Ariz. 269, 282, 645 P.2d 784, 797 (1982).

¶49    We decline Nelson's invitation to abandon this rule. *See State v. Spears*, 184 Ariz. 277, 288, 908 P.2d 1062, 1073 (1996) (refusing to consider juror affidavit that stated "the jury discussed defendant's failure to take the stand"). If a verdict could be impeached based on a juror's mental process at the time of deliberation, "'no verdict would be safe.'" *Gorski v. J.C. Penney Co.*, 103 Ariz. 404, 406, 442 P.2d 851, 853 (1968)

23

(quoting *McDonald v. Pless*, 238 U.S. 264, 268 (1915)).

### III. REVIEW OF DEATH SENTENCE

**¶50**     Because Nelson committed the murder after August 1, 2002, pursuant to A.R.S. § 13-756(A), we review the jury's aggravation finding and death sentence for abuse of discretion. Nelson asserts that abuse of discretion review under that statute violates the Eighth and Fourteenth Amendments and, therefore, that independent review is required.  We recently rejected this argument in *State v. Cota*, ___ Ariz. ___, ___ ¶¶ 91-92, ___ P.3d ___, ___ (2012).  He also claims that even under an abuse of discretion standard, his death sentence should be vacated and we turn to that argument next.

**¶51**     Amber was fourteen years old and Nelson was thirty-five years old when he murdered her.  Nelson does not contest the jury's finding of the (F)(9) aggravator and the jury plainly did not abuse its discretion in finding the aggravator.  Rather, Nelson argues that the jury abused its discretion in failing to find that the mitigation evidence was sufficiently substantial to call for leniency.

**¶52**     Nelson presented extensive evidence about his dysfunctional childhood.  An expert opined that, but for this background, he would not have committed this homicide.  Nelson also introduced an apology letter that he wrote to his sister and he addressed the court, apologizing to his sister and

24

thanking the jury.

¶53     The jury, nevertheless, did not abuse its discretion in determining that Nelson's mitigation was not "sufficiently substantial to call for leniency."  A.R.S. § 13-751(E).  The jury was entitled to give diminished mitigating weight to Nelson's childhood because he was thirty-five years old when he killed Amber, which lessens "the impact of his dysfunctional childhood on his conduct."  *State v. Prince*, 226 Ariz. 516, 542 ¶ 111, 250 P.3d 1145, 1171.  Nelson presented no evidence of his life between 1986 and 2006.

¶54     Nelson expressed remorse.  The jury was entitled to give this some mitigating weight, but it was entirely within the jury's discretion how much weight to give it.  *See State v. Williams*, 132 Ariz. 153, 157, 644 P.2d 889, 893 (1982) (stating that weighing evidence is the exclusive province of the trier of fact).

¶55     Nelson cites *State v. Bocharski*, 218 Ariz. 476, 189 P.3d 403 (2008), to support his claim that the jury abused its discretion.  In that case, we reduced Bocharski's sentence to life because we found that substantial mitigation evidence outweighed the strength of the (F)(9) aggravating circumstance.  218 Ariz. at 499 ¶ 112, 189 P.3d at 426.  But that case was before us on independent review.  *Id.* at 492 ¶ 79, 189 P.3d at 419.  Here, we review the death sentence for abuse of discretion

25

and do not independently reweigh the evidence.

## CONCLUSION

¶**56**　　　For the foregoing reasons, we affirm Nelson's conviction and sentence.[7]


_____
Robert M. Brutinel, Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice


## APPENDIX

1.　The death penalty is *per se* cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 186-87 (1976); *State v. Salazar*, 173 Ariz. 399, 411, 844 P.2d 566, 578 (1992).

2.　Execution by lethal injection is *per se* cruel and unusual punishment. *State v. Hinchey*, 181 Ariz. 307, 315, 890 P.2d

---

[7]　Nelson raises twenty-two issues to avoid preclusion on federal review. His statements of those issues and the cases he cites rejecting his contentions are presented verbatim in the Appendix.

602, 610 (1995).

3.  Arizona's death penalty statutory scheme is unconstitutional because it permits jurors unfettered discretion to impose death without adequate guidelines to weigh and consider appropriate factors and fails to provide principled means to distinguish between those who deserve to die or live. *State v. Johnson*, 212 Ariz. 425, 440, ¶ 69, 133 P.3d 735, 750 (2006).

4.  Arizona's death statute unconstitutionally requires defendants to prove that their lives should be spared. *State v. Fulminante*, 161 Ariz. 237, 258, 778 P.2d 602, 623 (1988).

5.  The statute unconstitutionally fails to require the cumulative consideration of multiple mitigating factors or require that the jury make specific findings as to each mitigating factor. *State v. Gulbrandson*, 184 Ariz. 46, 69, 906 P.2d 579, 602 (1995).

6.  Arizona's statutory scheme for considering mitigating evidence is unconstitutional because it limits full consideration of that evidence. *State v. Mata*, 125 Ariz. 233, 242, 609 P.2d 48, 57 (1980).

7.  Arizona's death statute is unconstitutional because there are no statutory standards for weighing. *State v. Atwood*, 171 Ariz. 576, 645-46 n.21(4), 832 P.2d 593, 662-63 n.21(4) (1992).

8.  The prosecutor's discretion to seek the death penalty unconstitutionally lacks standards. *State v. Cromwell*, 211 Ariz. 181, 192, ¶ 58, 119 P.3d 448, 459 (2005).

9.  Death sentences in Arizona have been applied arbitrarily and irrationally and in a discriminatory manner against impoverished males whose victims have been Caucasian. *State v. West*, 176 Ariz. 432, 455, 862 P.2d 192, 215 (1993); *State v. Sansing*, 200 Ariz. 347, 361, ¶ 46, 26 P.3d 1118 (2001).

10. The Constitution requires a proportionality review of a defendant's death sentence. *State v. Gulbrandson*, 184 Ariz. 46, 73, 906 P.2d 579, 606 (1995).

11. Appellant's death sentence is in violation of his rights to a jury trial, notice and due process the Fifth, Sixth and

27

Fourteenth Amendments since he was not indicted for a capital crime. *McKaney v. Foreman*, 209 Ariz. 268, 271, ¶ 13, 100 P.3d 18, 21 (2004).

12. The reasonable doubt jury instruction at the aggravation trial lowered the state's burden of proof and deprived Appellant of his right to a jury trial and due process under the Sixth and Fourteenth Amendments. *State v. Dann (Dann I)*, 205 Ariz. 557, 575-76, ¶ 74, 74 P.3d 231 (2003).

13. Arizona's death statute creates an unconstitutional presumption of death and places an unconstitutional burden on Appellant to prove mitigation is "sufficiently substantial to call for leniency." *Walton v. Arizona*, 497 U.S. 639, 648 (1990)*; State v. Glassel*, 211 Ariz. 33, 52, ¶ 72, 116 P.3d 1193, 1212 (2005).

14. The failure to provide the jury with a special verdict on Appellant's proffered mitigation deprived him of his rights to not be subject to ex post facto legislation and right to meaningful appellate review. *State v. Roseberry*, 210 Ariz. 360, 373, ¶ 74 & n.12, 111 P.3d 402 (2005).

15. Permitting the State to argue that Appellant's mitigation evidence should [be] given limited or no weight absent proof of a causal nexus to the murder(s) was in violation of the Eighth and Fourteenth Amendments. *State v. Anderson (Anderson II)*, 210 Ariz. 327, 350, ¶¶ 93-97, 82, 111 P.3d 369 (2005).

16. Arizona's *current* protocols and procedures for execution by lethal injection constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *State v. Andriano*, 215 Ariz. 497, ¶¶ 61-62, 161 P.3d 540 (2007).

17. The jury instruction that required the jury to unanimously determine that the mitigating circumstances were "sufficiently substantial to call for leniency" violated the Eighth Amendment. *State v. Ellison*, 213 Ariz. 116, ¶¶ 101-102, 140 P.3d 899 (2006).

18. The failure to instruct the jury that only murders that are "above the norm" may qualify for the death penalty violates the Sixth, Eighth and Fourteenth Amendments. *State v. Bocharski (Bocharski II)*, 218 Ariz. 476, ¶¶ 47-50, 189 P.3d 403 (2008).

19. The penalty phase jury instructions that advised the jury they "must" return a death sentence in various circumstances and forms of verdict impermissibly shifted the burden of proof to the defendant and created a presumption of death. *State v. Tucker (Tucker II)*, 215 Ariz. 298, 317, 160 P.3d 197 (2007).

20. Arizona's death penalty scheme violates Appellant's right to equal protection under the Fourteenth Amendment since it fails to require the jury to make specific findings of fact and conclusions of law reviewable on appeal. *State v. Dann (Dann III)*, 220 Ariz. 351, ¶¶ 127-28, 207 P.3d 604 (2009).

21. Arizona's death penalty scheme violates Appellant's rights under the Eighth and Fourteenth Amendments by not requiring that once a defendant proves mitigating circumstances exist that the State prove beyond a reasonable doubt that the mitigation is not sufficiently substantial to call for leniency and that death is the appropriate sentence. *State v. Dann (Dann III)*, 220 Ariz. 351, ¶¶ 94-95, 207 P.3d 604 (2009).

22. The death penalty is an irreversible denial of human rights and international law. *State v. Richmond*, 136 Ariz. 312, 322, 666 P.2d 57 (1983).