NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SABINA ANN MARQUEZ, *Appellant.*

No. 1 CA-CR 18-0338
FILED 4-18-2019

Appeal from the Superior Court in Coconino County
No. S0300CR201500465
The Honorable Jacqueline Hatch, Judge *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge James B. Morse Jr. and Judge Jon W. Thompson joined.

---

**S W A N N**, Judge:

¶1 Sabina Ann Marquez appeals from her conviction and order of probation for theft. Marquez challenges the superior court's denial of her motion for mistrial, in which she alleged multiple instances of prosecutorial misconduct. Even assuming the prosecutor's actions constituted misconduct, we find sufficient evidence to support the court's findings that the misconduct did not deny her a fair trial. We therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 A grand jury indicted Marquez of one count of theft with a value of $4,000 to $25,000, a class three felony. The state alleged that, between June and December 2013, Marquez stole over $4,000 in cash from her former employer, Flagstaff Bear Ridge Apartments, by keeping tenants' cash rent payments. Marquez pleaded not guilty, and the matter proceeded to a five-day jury trial. Near the end of trial, Marquez moved for mistrial, citing several alleged incidents of prosecutorial misconduct, mostly related to the state's elicitation of testimony on topics that the court had precluded. The court denied the motion. The jury found Marquez guilty of theft with a value of $2,000 to $3,000, a class five felony. The court suspended Marquez's sentence and ordered that she serve three years' probation and pay restitution. Marquez appeals.

## DISCUSSION

¶3 Marquez argues that the court erred by denying her motion for mistrial after the prosecutor, despite court orders to the contrary, elicited testimony regarding (1) Marquez's receipt of cash payments from a tenant before the time frame relevant to the charged offense, and (2) a non-witness accountant's work on the case for the state.

¶4 Prosecutorial misconduct constitutes reversible error only if misconduct actually exists, and there is a reasonable likelihood that the misconduct could have affected the jury's verdict, thereby denying the

defendant a fair trial. *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007). The misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In reviewing claims of prosecutorial misconduct, our "focus is on the fairness of the trial, not the culpability of the prosecutor." *State v. Bible*, 175 Ariz. 549, 601 (1993). Alleged instances of prosecutorial misconduct are evaluated both separately and for their cumulative effect. *Hughes*, 193 Ariz. at 79.

¶5            A declaration of mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Dann*, 205 Ariz. 557, 570, ¶ 43 (2003) (citation omitted). The superior court is in the best position to determine whether a mistrial is appropriate because the judge "is aware of the atmosphere of the trial, the circumstances surrounding the incident, the manner in which any objectionable statement was made, and the possible effect on the jury and the trial." *State v. Williams*, 209 Ariz. 228, 239, ¶ 47 (App. 2004) (citation omitted). We therefore review a ruling on a motion for mistrial due to prosecutorial misconduct for an abuse of discretion. *State v. Trani*, 200 Ariz. 383, 384, ¶ 5 (App. 2001). Here, we find sufficient evidence to support the court's denial of Marquez's motion.

I.      THE STATE'S ELICITATION OF TESTIMONY REGARDING MARQUEZ'S RECEIPT OF CASH IN 2011 DID NOT DENY MARQUEZ A FAIR TRIAL.

¶6            Shortly before trial, Marquez filed a motion in limine to preclude Bryan Landers, a former tenant at the apartment complex, from testifying. Landers was planning to testify about, among other things, paying Marquez in cash for a deposit and bills in 2011. While Marquez did not dispute that she accepted cash during the charged time frame, she argued that evidence of earlier cash payments would be redundant and would invite the jury to believe that she had been stealing money from the apartment complex since 2011. Noting that it "didn't want to take this case back to 2011," the court concluded that Landers may testify, but his testimony must be limited to observations in the time frame of the charged offense (June to December 2013).

¶7            On the same day as argument on Marquez's motion in limine, the state called Landers to testify and asked, without referring to any particular time frame:

Q: Did you yourself ever give the defendant cash?

A: I did.

Q: And what was that for?

A: It was $150 for a security deposit and I believe 30 -- approximately $30 twice for electric.

As the state asked a follow-up question about Landers's cash payments, Marquez objected. The court sustained the objection, and at Marquez's request, struck the testimony from the record and instructed the jury not to consider it in its deliberations.

¶8        Near the end of trial, Marquez moved for mistrial, citing the state's elicitation of the 2011 cash payment testimony as an alleged instance of prosecutorial misconduct. After argument, the court denied the motion, explaining that it did not interpret the state's questioning as "flouting the Court's orders" to stay within the relevant time frame. On the issue of whether the jury would still consider the testimony, the court noted that "you also have to take into consideration these people have been sitting here for five days," and that "[t]hey've been instructed to ignore it, and I have to feel confident that that's what they will do."

¶9        Marquez's argument that the state's elicitation of testimony about the 2011 cash payment constitutes misconduct that "so infected the trial with unfairness as to make the resulting conviction a denial of due process" fails. *See Hughes*, 193 Ariz. at 79, ¶ 26. Even if the state's actions constituted misconduct, there is sufficient evidence that Marquez was not convicted as a result of misconduct, and she was not denied a fair trial. *See State v. Newell*, 212 Ariz. 389, 403–04, ¶¶ 67–70 (2006). Landers's testimony about Marquez accepting cash did not refer to the time frame in which the payments occurred, nor did it assert that Marquez kept any of the cash for herself. The testimony therefore did not give the jury a reason to believe, as Marquez suggests, that she had been stealing from the apartment complex since 2011. Rather, the testimony established that Marquez had accepted cash from tenants at some point in time, which, though cumulative, is a fact she does not dispute. Though the testimony may have related to a prohibited topic, it was not presented with sufficient detail to create the prejudice that the order in limine was designed to prevent. And the court sustained Marquez's objection, struck the testimony from the record, immediately instructed the jury not to consider it, and, in the final jury instructions, again instructed the jury not to consider it. We find no error.

II.     THE STATE'S ELICITATION OF TESTIMONY REGARDING A
        NON-WITNESS'S ACCOUNTING DID NOT DENY MARQUEZ A
        FAIR TRIAL.

¶10          At a pretrial hearing, the court determined that a state
witness, Chris Lambert, who conducted an accounting of the apartment
complex's receipts and deposits, was not qualified to testify as an expert,
but that he could nevertheless testify as a lay witness.  The state ultimately
did not call Lambert because his expected testimony overlapped with that
of Brad Conway, a detective for the Flagstaff Police Department who had
worked the case since 2016.

¶11          At trial, while questioning Conway about his review of the
records of receipts and deposits, the state asked, "[c]ould you explain sort
of the process in determining whether money was missing and whether or
not you were able –– ever able to find whether an actual theft had
occurred[?]"  Conway responded, "[y]es" and began to explain the work
Lambert had done in the investigation.  Marquez objected on hearsay
grounds, argued that the question called for an opinion on Marquez's guilt,
and moved for a mistrial.  The court sustained the objection, explaining that
"[it doesn't] want [Conway] testifying to what Mr. Lambert did."  And,
noting that the state's compound question was likely confusing for the jury,
the court denied the motion for mistrial.  The court then read back the
state's question to the jury, informed it that the question and answer were
stricken from the record, and instructed it "not to consider it at all in your
deliberations."

¶12          During her case, Marquez called the detective who initially
worked on the investigation, Jolene Coules.  On cross-examination, the state
asked Coules whether she submitted the receipt and deposit slips from the
investigation "to a forensic accountant," and then named Lambert as that
accountant.  Marquez objected and again moved for a mistrial, arguing that
bringing up Lambert again was "egregious conduct."  The state argued that
the court's earlier ruling only pertained to eliciting hearsay about Lambert,
and that this instance did not involve hearsay.  The court sustained the
objection, asserting that "[w]e're not going into Mr. Lambert at all," because
mentioning him may lead the jury to wonder "[w]hy didn't we bring this
person in? Why aren't we hearing from him?"  The court denied Marquez's
motion for mistrial.  Marquez requested to strike any comments about
Lambert, and the court warned that would "just bring[ ] more attention to
it."  Ultimately, at the suggestion of Marquez, the court instructed the jury
to "disregard the last question and any answer thereto."  Near the end of

trial, Marquez filed a written motion for mistrial, which reiterated her earlier arguments, and which the court denied.

¶13 Here, Marquez argues that the state's elicitation of testimony about Lambert's accounting suggested to the jury that Marquez's thefts had been verified by an expert. But, even assuming the state's actions constituted prosecutorial misconduct, Marquez has not established that the misconduct was so egregious as to deny her due process, or that there is a reasonable likelihood that the testimony could have affected the jury's verdict. *See Morris*, 215 Ariz. at 335, ¶ 46. To begin with, hearing that a "forensic accountant" was involved in analysis of the investigation did not provide the jury with new substantive information, as the state had offered other evidence establishing that Marquez's cash receipts did not match up with her bank deposits. To whatever extent the improper testimony bolstered the credibility of the state's other evidence, that was remedied — as with the testimony about the 2011 cash payments—by the court sustaining Marquez's objections, striking testimony about Lambert, and instructing the jury not to consider it both immediately after the testimony and again before deliberations. *See Newell*, 212 Ariz. at 403, ¶ 68 (presuming the jury follows the court's instructions); *cf. State v. Manuel*, 229 Ariz. 1, 6, ¶¶ 23–24 (2011) (finding that a court's cautionary instruction generally cures any possible prejudice in the context of argumentative comments during opening statements).

III.   THE CUMULATIVE EFFECT OF THE ALLEGED INSTANCES OF MISCONDUCT DOES NOT WARRANT REMAND TO THE SUPERIOR COURT.

¶14 Marquez also argues that the cumulative effect of both alleged instances of misconduct—eliciting testimony about (1) Marquez receiving cash from a tenant in 2011 and (2) Chris Lambert's accounting on the case—warrants vacating the superior court's denial of her motion for mistrial. *See Hughes*, 193 Ariz. at 79, ¶ 26. She further argues, relying on *Pool v. Superior Court*, 139 Ariz. 98 (1984), that the state's alleged misconduct was so egregious and intentional that it warrants vacating her conviction and ordering dismissal of the case with prejudice, barring retrial under the double jeopardy clause. But, even considering the alleged instances cumulatively, the record does not reflect pervasive misconduct that deprived Marquez of a fair trial. As discussed above, any misconduct by the state, to the extent it elicited testimony supporting the state's case, was adequately remedied by the court's precautionary measures, i.e., striking the testimony and repeating jury instructions. And the court's denial of the motion for mistrial is supported by its implied finding that the nature of the

five-day trial made the brief instances of improper testimony less significant. *See State v. Nelson*, 229 Ariz. 180, 190, ¶ 46 (2012) (noting that a prosecutor's improper argument "took up less than one page out of more than twenty pages of transcript"). Accordingly, the court did not abuse its discretion by denying Marquez's motion for mistrial.

## CONCLUSION

¶15 We therefore affirm Marquez's conviction and order of probation.



AMY M. WOOD • Clerk of the Court
FILED: AA

7