NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

LUIS FERNANDO VAZQUEZ, *Appellant*.

No. 1 CA-CR 21-0154
FILED 6-2-2022

Appeal from the Superior Court in Maricopa County
No. CR2011-161993-001
The Honorable Warren J. Granville, Judge *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Cynthia J. Bailey and Judge D. Steven Williams joined.

_____

**S W A N N**, Judge:

¶1          Luis Fernando Vazquez appeals from his conviction and resulting sentence for theft of means of transportation. Vazquez argues the superior court committed reversible error by denying his motion for a mistrial based on prosecutorial error[1] in closing argument. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          The relevant facts are uncontested. John worked as a customer service representative for Penske Truck Leasing in September 2011. One night that month, he was monitoring the truck yard when he saw Vazquez attempting to get into one of the trucks. John immediately recognized Vazquez because Vazquez worked as a commercial driver for SP Richards, a company that regularly leased trucks from Penske, and the two had interacted frequently over the past year. Vazquez told John that he was there to pick up a truck for SP Richards but the key he had been given did not work. John helped Vazquez open the door and start the truck, then Vazquez drove away.

¶3          While reviewing rental contracts a few minutes later, John noticed that the truck Vazquez had taken was scheduled for a different company that night. Believing the truck had mistakenly been leased to two companies at the same time, John immediately told his manager about the problem. The manager soon discovered that SP Richards had not reserved any trucks for that night. After further learning Vazquez had stopped working for SP Richards several weeks earlier, the manager called the

---

[1]          Because there is no allegation that the prosecutor committed intentional misconduct in this case, we refer to the prosecutor's conduct as "prosecutorial error." *See State v. Murray*, 250 Ariz. 543, 548, ¶ 12 (2021) (characterizing a prosecutor's incorrect reasonable-doubt statement as "error" rather than "misconduct" in the absence of evidence that the prosecutor's actions were intentional).

police and reported the truck stolen. The next day, police officers found the truck abandoned several miles away from Penske.

¶4        A grand jury indicted Vazquez on one count of theft of means of transportation, a class three felony. At trial, defense counsel explained in their opening statement that the state would not be able to prove the charged offense because, *inter alia*, Vazquez had "been charged with the wrong statute," a theory he later repeated in closing argument. Vazquez testified and acknowledged that when he took the truck, he no longer worked for SP Richards. According to Vazquez, John had allowed him to borrow the truck for a few hours that night so he could complete a few side jobs. Vazquez also explained that John called him shortly after he had left and asked him to return the truck right away. When Vazquez said he could not do so because he had already started a job, John told him to leave the truck somewhere close to Penske when he was done.

¶5        In pertinent part, the final jury instructions included an instruction on the lesser-included offense of unlawful use of means of transportation, which directed the jurors to consider the lesser offense only if they either found Vazquez not guilty of theft of means of transportation or, "after full and careful consideration of the facts," could not agree on a verdict for that charge. The prosecutor addressed the lesser-included offense instruction in closing argument:

> The defense included a lesser included. And that's on Page 5. It's fair game for you all. The State did not charge this. It's up to the jury to consider. . . . If you find that the defendant[,] without the intent to permanently deprive, knowingly took unauthorized control over another person's transportation, the tractor, that's a violation of that lesser included statute. The State did not charge that[.]

¶6        Following the state's closing argument, the superior court excused the jurors, and Vazquez moved for a mistrial based on the prosecutor's statement that the defense had requested the lesser-included offense instruction. Declining to rule on the motion that instant, the court ordered the parties to provide case law supporting their positions, then recessed for the day.

¶7        The next morning, Vazquez argued that he was entitled to a mistrial under *State v. Stambaugh*, 121 Ariz. 226 (App. 1978). The prosecutor responded that although he had made a "mistake," *Stambaugh* did not require a mistrial. After considering the parties' arguments, the superior

court found that the prosecutor's statement was improper but denied the mistrial motion. Over Vazquez's objection, the court instead gave the following curative instruction:

> [A]ny reference by counsel during closing argument as to which party requested a particular jury instruction is hereby stricken, and the jury is instructed to disregard that reference. You may not consider it in any way in reaching your verdict.

**¶8** The jury found Vazquez guilty of theft of means of transportation, and the superior court later sentenced him to nine years' imprisonment.[2] Vazquez appeals.

## DISCUSSION

**¶9** Asserting the prosecutor's "actions here are identical to those in *Stambaugh*," Vazquez argues the superior court abused its discretion by denying his mistrial motion. For its part, the state contends (1) the absence of a contemporaneous objection limits our review to fundamental error, and (2) Vazquez is not entitled to relief under that standard because *Stambaugh* is distinguishable. We need not resolve the parties' standard-of-review dispute because, for reasons set forth *infra* ¶¶ 14–16, Vazquez's claim fails under any applicable standard of review. *See State v. Diaz*, 223 Ariz. 358, 360, ¶ 11 (2010) ("Regardless of how an alleged error ultimately is characterized, . . . a defendant on appeal must first establish that some error occurred.").

**¶10** "Because the trial court is in the best position to determine the effect of a prosecutor's comments on a jury, we will not disturb a trial court's denial of a mistrial for prosecutorial [error] in the absence of a clear abuse of discretion." *State v. Newell*, 212 Ariz. 389, 402, ¶ 61 (2006). To determine whether prosecutorial error warrants a mistrial, courts consider: "(1) whether the prosecutor's statements called to the jury's attention matters it should not have considered in reaching its decision and (2) the probability that the jurors were in fact influenced by the remarks." *Id.* at ¶ 60. "[R]eversal is warranted if a reasonable likelihood exists that the [prosecutorial error] could have affected the jury's verdict, thereby denying the defendant a fair trial." *State v. Speer*, 221 Ariz. 449, 458, ¶ 42 (2009) (citation and internal quotation marks omitted); *see also State v. Nelson*, 229 Ariz. 180, 189, ¶ 38 (2012) (explaining prosecutorial error is harmless when

---

[2] Vazquez absconded on the final day of trial and was eventually sentenced in 2019.

courts are satisfied "beyond a reasonable doubt it did not contribute to or affect the verdict" (citation omitted)).

¶11        As an initial matter, it is undisputed that the prosecutor's comment constituted error.  *See Stambaugh*, 121 Ariz. at 228 ("[T]hat appellant . . . offered an instruction on the lesser included offense . . . was not a matter that the jurors would have been justified in considering in determining their verdict.").  We next address Vazquez's contention that *Stambaugh* requires reversal of his conviction.  In *Stambaugh*, the superior court instructed the jurors on the charged offense of second-degree murder and the lesser-included offense of involuntary manslaughter.  *Id.* at 227–28.  Despite the inclusion of the lesser offense, defense counsel asserted an "all-or-nothing" defense in closing argument, urging the jurors to either find the defendant guilty of the charged offense or not guilty at all:

> (The prosecutor) has tried every which way to get a conviction in this case.  He starts out by saying: This murder is intentional.  He will show there is some deliberate act with malice.  Now, he is talking about involuntary manslaughter, talking about instructions on involuntary manslaughter.  Sometimes lawyers demand the moon hoping they can get something.  I submit (the prosecutor) is asking for second degree murder hoping he can get involuntary manslaughter from you.  I say to you: If [the defendant] did all the things (the prosecutor) says, convict him of second degree murder.  If he is innocent, free him.  *Id.* at 227.

¶12        In rebuttal, the prosecutor responded to the defense theory:

> He says I'm talking about manslaughter; that I'm asking you to convict him of murder, yet I'm giving you a discussion relating to the crime of manslaughter.  As (defense counsel) indicated, before we came out here and started final arguments, we sat with the judge, spent the better part of an hour going over the instructions.  The fact is (defense counsel) requested an instruction on manslaughter.  This is not something that I—[.]  *Id.*

The superior court sustained defense counsel's objection at that point, then later instructed the jurors:

> As a matter of law[,] I decide which instructions should be given regardless of which party requests those instructions.  If an instruction is requested that I don't think should be

> given, I will not give it. If one is requested which I think must
> be given, I will give it. *Id.*

The jurors ultimately found the defendant guilty of involuntary manslaughter. *Id.*

¶13         On appeal, we vacated his conviction and sentence, concluding the superior court improperly denied the defendant's subsequent mistrial motion. *Id.* at 228–29. We explained that "the prosecutor's reference to defense counsel's request for the instruction was doubly prejudicial: it implied, first, an admission that appellant was guilty of the lesser offense and, second, duplicity on the part of defense counsel." *Id.* at 228. We also reasoned that the superior court's instruction emphasized rather than cured the resulting prejudice because it "tended to further disparage defense counsel's argument for acquittal as the alternative to conviction of second degree murder." *Id.*

¶14         We find *Stambaugh* distinguishable. Here, unlike in *Stambaugh*, the jurors found the defendant guilty of the greater offense. And as recounted *supra* ¶ 5, the lesser-included offense instruction prohibited consideration of the lesser offense unless the jurors first found Vazquez not guilty of the greater offense or could not reach a verdict on that charge. Because we presume the jurors followed that instruction, *Newell*, 212 Ariz. at 403, ¶ 68, we have no basis to conclude that the jurors ever confronted the prosecutor's error in deciding the case, let alone that the error influenced the verdict. *See Speer*, 221 Ariz. at 458, ¶ 42; *see also Nelson*, 229 Ariz. at 189, ¶ 38.

¶15         Nor is there merit to Vazquez's argument that the superior court was nonetheless compelled to order a mistrial based on the similarities his case shares with *Stambaugh*, notwithstanding the ultimate verdict. The *Stambaugh* prosecutor's error severely damaged the credibility of the defendant's unequivocal all-or-nothing defense, given that it impermissibly implied that the defendant in fact believed the evidence supported the lesser offense. Here, on the other hand, the prosecutor's error occurred in initial closing argument when defense counsel had already introduced the notion that the state had charged Vazquez with the wrong crime. Given these circumstances, the superior court could reasonably determine that Vazquez suffered less prejudice than did the *Stambaugh* defendant. *See State v. Armstrong*, 208 Ariz. 345, 354, ¶ 40 (2004) (explaining an abuse of discretion occurs when "no reasonable judge would have reached the same result under the circumstances").

**¶16** Furthermore, the superior court's curative instruction evaded the flaw we identified in the *Stambaugh* instruction. Here, the court merely directed the jurors to disregard the improper comment whereas the *Stambaugh* instruction implicitly endorsed the propriety of the lesser-included offense, thereby exacerbating the harm done to the defense theory. Within the context of Vazquez's trial, the court's curative instruction sufficiently ameliorated any resulting prejudice. *See State v. Adamson*, 136 Ariz. 250, 262 (1983) (explaining a mistrial "is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted"); *State v. Herrera*, 203 Ariz. 131, 135, ¶ 6 (App. 2002) ("A trial court is in the best position to determine an appropriate remedy for trial error that will preserve a defendant's right to a fair trial."). Accordingly, the superior court did not err, fundamentally or otherwise, in denying the mistrial motion.

## CONCLUSION

**¶17** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

7